## No. 91.—Morelly Herschfeld *vs.* Dexel & Co.

[1.] The Court on the trial of a cause, may proceed, on their knowledge of the laws of another State, and it is not necessary in that case, to prove them; and their judgment will not be reversed, when they proceed in such knowledge, unless it should appear that they decided wrong as to those laws.

[2.] An assignment of debts and choses in action, legal in the State of New York, where it was made, cannot dispose of effects in this State, in a man-

ner prohibited by our law, inconsistent with its policy, and which is explicitly declared by it to be fraudulent and void.

[3.] The place where the contract is entered into, is not to be exclusively considered, if the parties had in contemplation another place, at the time of the contract; the laws of the latter will be preferred in the construction of the contract.

Claim, in Muscogee Superior Court. Tried before Judge IVERSON. November Term, 1852.

This was a claim case in Muscogee Superior Court. Dexel & Co., creditors of E. & B. Mendhime, sued out an attachment and had it levied upon certain goods in the possession of the said E. & B. Mendhime, which goods were claimed by one Morrely Herschfeld, under and by virtue of the following instrument, the construction of which was brought up for the consideration of this Court.

This indenture, made at the City of New York, this 13th day of March, 1852, between Ernil Mendhime, of the first part, and Morely Herschfeld, of the second part. Whereas, the said party of the first part, is embarrassed in his business, and unable to pay his indebtedness in full, and is desirous of providing for the payment thereof, in such order of priority as shall be just. Now, therefore, this indenture witnesseth, that the said party of the first part, in consideration of the premises and one dollar to him in hand paid, hath sold, assigned, transferred and set over unto the party of the second part, all the estate, both real and personal, of him, the said party of the first part, including his stock of merchandize, in his store at Columbus, Georgia, and all his bills receivable, notes outstanding, credits, accounts, claims and demands, and all other of his estate, both real and personal, of every name and kind, wheresoever the same may be; to have and to hold the same unto the said party of the second part in trust, to take possession of the same, and to collect in all bills receivable, notes outstanding, credits, accounts, claims and demands, and to turn the said hereby assigned estate, into cash, and out of the proceeds thereof, after paying all the just and proper expenses in executing the herein contained trusts, to pay, in the first place, the expenses of preparing this assignment, and

to retain for himself, the said party of the second part, the just and legal compensation, for executing the herein contained trust, and after paying the above in full, then to pay in the second place, unto Benedict and Boardman, the amount which the party of the first part is indebted unto them for professional services, and which does not exceed one hundred dollars; and after paying the above in full, then to pay in the third place, unto Morrely Mendhime, the sum of two thousand dollars, in which amount the said party of the first part, is indebted unto him, in part for his salary as a clerk in the employ of said party of the first part, and the residue for cash, which he loaned unto the said party of the first part, and for which said amount he holds the promissory note of the said party of the first part, and also to pay in full unto Simon Lesserman, the sum of nine hundred and eighty-seven dollars and fifty cents, in which sum the said party of the first part, is indebted unto him, for so much money paid by him for the said party of the first part, having endorsed the promissory note of the said party of the first part for that amount, at his request, which notes the said Lesserman paid and still holds, and also to retain for himself, the said party of the second part, the sum of two thousand dollars, in which amount the said party of the first part, is indebted unto him, in part for cash paid for on account of, and at the request of the said party of the first part, having endorsed the promissory notes of the said party of the first part, at his request, and having paid the same, which he still holds, and the residue for cash loaned by him to said party of the first part; and after paying the above in full, then out of what may remain of the said net proceeds of the hereby assigned estate, to pay, in the fourth place, in full if sufficient for that purpose, unto all the other creditors of the said party of the first part, the amount in which the said party of the first part is indebted unto them, respectively; but if not sufficient to pay the same in full, then to divide such last mentioned creditors, *pro rata* according to the amounts in which said party of the first part is indebted unto them respectively, and the said party of the first part does hereby constitute and appoint the said party of the second part, his true and lawful attorney for

him, and in his name, to do and perform every act, deed and thing, in order to carry into full force and effect, the provisions of this assignment. And the said party of the second part, in consideration of the premises, and of the one dollar to him in hand paid, by said party of the first part, does hereby accept of of this assignment, and become a party thereto, and covenants and promises to and with the said party of the first part, that he will perform and fulfil the trusts herein contained, according to the true intent and meaning thereof; and that he will, with all convenient speed, cause a just, true and correct inventory of all of the hereby assigned estate, to be made and annexed to this assignment. In witness whereof, the said parties have hereunto set their hands and seals, the day and year first herein written.

Signed,        E. MENDHIME.

J. W. BENEDICT.                M. HERSCHFELD.

The Court below charged the Jury that the instrument above recited, was contrary to the Act of 1818, and consequently void; to which decision the counsel for the complainant excepted, and upon that point this case is brought to this Court for review.

W. WILLIAMS, for plaintiff in error.

MOSES and THORNTON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

That this assignment is contrary to the Act of 1818, and consequently illegal and void, we entertain no doubt. Indeed, that point is conceded. And it is really the only question made and determined in the Court below.

[1.] But it is argued that this assignment, giving a preference to a portion of the creditors over the rest, is good in the State of New York, where it was made. It did not appear to the Court below, nor has it been made to appear with sufficient distinctness to this Court, that the law of New York was different from ours, on the subject of assignment of choses in action. I am inclined to think, and such will be found to be the practice,

that the Court on the trial of a cause, may proceed on their knowledge of the laws of another State; and it is not necessary, in that case, to prove them; and their judgment will not be reversed when they proceed on such knowledge, unless it should appear that they decided wrong, as to those laws. 12 *Vermont*, 396.

[2.] But to give to the plaintiff in error the full benefit of his objection, we will admit that this assignment is legal and valid in New York, and would be executed in that State. Still we are not required by the comity of States, to enforce within our bounds or jurisdiction, a cotract made elsewhere, and which not only contravenes the policy, but violates a positive Statute of this State, and that too, in a contest between our own citizens and those residing within a foreign jurisdiction, as to property situated within our own limits, and the only property out of which the domestic creditors can be paid. We believe these principles to be fully and unequivocally sustained and settled. 3 *Kent's Com.* 48. *Holmes vs. Remsen*, 20 *Johns.* 255, 265. 4 *Johns. Ch. Rep.* 471. *Milne vs. Morton*, 6 *Binney*, 361. *LeRoy vs. Crowninshield*, 2 *Mason*, 157. *Ogden vs. Saunders*, 12 *Wheat.* 259. *Ingraham vs. Geyer*, 13 *Mass. Rep.* 146. *Smith vs. The Union Bank of Georgetown*, 5 *Peters*, 518. In this last case, Mr. Justice *Johnson*, in delivering the opinion of the Court, said, that " it is an acknowledged doctrine, that in conflicts of rights, those arising under our own laws, if not superseded in point of time, shall take precedence, ' *majus jus nostrum quam jus atienun servemus.*' The obligation of the sovereign to enforce his own laws and to protect his own subjects, is acknowledged to be paramount." And in the case of *Ogden vs. Saunders*, 12 *Wheaton*, Mr. Justice *Washington*, said, " where a contract is of an immoral character or contravenes the policy of the nation to whose tribunal the appeal is made, the remedy which the comity of nations affords, for enforcing the obligation of contracts wherever formed, is denied."

Similar doctrines will be found maintained in the English Courts, to those held by American Jurists. *Hunter vs. Potts*, 4 *D. & E.* 182. *Sill vs. Worswick*, 1 *Hen. Bl.* 690. *Potter vs.*

*Brown,* 5 *East.* 131.   In this last case, Lord *Ellenborough* said, "we also import, together with their persons, the existing relations of foreigners, as between themselves, according to the laws of their respective countries, *except, indeed, where the laws clash with the rights of our own subjects in England, and one or the other must necessarily give way; in which case our own is entitled to the preference.*

The same general doctrine is recognized in the Courts of Scotland. *Levett vs. Levett, Ferguson's Scot. Consistorial Rep.* 633. *Ingraham's Ecclesiastical Rep.* 366. *Ibid,* 168. *Ibid,* 397. *Ibid,* 460. *Ibid,* 466. The principle here laid down is, that when the admission of the foreign law would be clearly inconsistent with the essential policy and institutions of the country where it is proposed to be received, this must create an effectual bar to the extension of the principle to such a case.

[3.] There is another fact here, important to be considered. When this assignment was made, as is obvious from the face of it, the parties had in contemplation another place for its execution.   The property was in this State, and the trust was to be performed here.   Of course, then, the law of Georgia will be preferred, in the construction of the contract.

How far this doctrine, sustained as it is, not only in this country, but throughout the civilized world, of giving preference to our own people and to our own laws, rather than to the citizens and laws of a foreign State, in a conflict between the two, harmonizes with the *ad captandum* sentiment of knowing "no east, no west, no north, no south," I will not undertake to decide.   It would seem to give but little encouragement to this expansive patriotism!