76341. SWAFFORD et al. v. GLOBE AMERICAN CASUALTY COMPANY.
(371 SE2d 180)

BIRDSONG, Chief Judge.
Appellants Richard Swafford, his grandfather Charles Swafford, and his uncle Ronnie Swafford appeal a declaratory judgment establishing uninsured motorist coverage among them for a two-car automobile collision. In the collision, Richard Swafford (insured by State Farm Mutual Insurance Company with uninsured coverage in the amount of $100,000/$300,000) was driving his grandmother Guthrie's car with her knowledge and consent. Her uninsured motorist coverage was also with State Farm, in the amount of $25,000/$50,000. Passengers in the Guthrie vehicle were grandfather Charles Swafford (insured by Nationwide Mutual Insurance Company with uninsured coverage of $25,000/$50,000) and his son Ronnie Swafford, who had no insurance but was a named insured under his father's Nationwide policy. The tortfeasor Doyle Bell had liability coverage with Globe American Casualty Company in limits of $15,000/$30,000. The parties agreed the laws of Tennessee are applicable in the case.

The trial court found: "If the liability limits of Doyle Bell's Globe American policy ($15,000/$30,000) are exhausted, all three Swaffords will be entitled to recover under the Guthrie policy which provides uninsured motorist coverage in the amount of $25,000/$50,000. However, they will be able to recover only to the extent of an additional $10,000/$20,000 since Tennessee Law requires that credit be given for monies paid under the liability policy. T. C. A. § 56-7-1201 (d). In the event that the primary uninsured motorist coverage (Guthrie automobile-State Farm policy) is exhausted, Tennessee Law provides for potential recovery as excess, from one additional uninsured motorist policy. T. C. A. § 56-7-1201 (b) (2). However, the Swaffords cannot recover under Richard Swafford's policy since Richard is a 'relative' of Mrs. Guthrie and the other Swaffords are not insureds. (See pages 3, 10 & 11 of Richard Swafford's policy) T. C. A. § 56-7-1201 (b) (2). Nationwide has no liability for uninsured motorists' insurance since its policy provides as authorized per T. C. A. § 56-7-1205, that if there is 'other insurance' Nationwide's coverage applies only to the extent that it 'exceeds' the liability limits of such other insurance. In this case, Nationwide's coverage does not exceed the liability limits of the Guthrie coverage." The ruling that Nationwide is not liable for coverage to Charles and Ronnie Swafford has not been appealed. *Held*:

1. Appellants Richard Swafford and Charles and Ronnie Swafford contend the exclusion in Richard Swafford's State Farm policy of him if occupying a "relative's" car has been held to be invalid as violating the purpose of the uninsured motorist statute, in three opinions of the Court of Appeals of Tennessee: *Elam v. Protective Ins. Co.*, Tipton Law No. 1 (Tenn. App., Western Section, filed July 16, 1987), *Weir v. Glens Falls Ins. Co.*, Tipton Equity No. 2 (Tenn. App., Western Section, filed July 16, 1987), and *Dockins v. Moore*, C/A No. 1115, Knox Law (Tenn. App., Eastern Section, filed August 25, 1987).

The appellee State Farm responds that since appellants did not argue this position or present these Tennessee decisions to the trial court before it ruled on August 27, 1987, they cannot rely upon them in this appellate court to reverse the trial court's ruling. State Farm cites *Hamby v. Hamby*, 103 Ga. App. 826 (121 SE2d 169) and *Carter v. Graves*, 206 Ga. 234 (56 SE2d 917) for the proposition that if reliance is placed on the law of another state, the law of that state must be placed in evidence; and *Hamilton v. Metro. Life Ins. Co.*, 71 Ga. App. 784 (32 SE2d 540) as meaning that such requirement of evidentiary proof is not eliminated by OCGA § 24-1-4, which authorizes judicial notice of law and decisions of sister states "without the introduction of proof." See also *Savannah &c. R. Co. v. Evans*, 121 Ga. 391 (49 SE 308).

It is clear that the three recent Tennessee decisions unequivo-

cally invalidate the exclusion relied upon by State Farm in this case. If the trial court was obliged to regard them in rendering its judgment a few days after their filing, its judgment for State Farm was error. The history and the confusion in much of the Georgia law re the recognition of foreign law in our courts, is well expressed in *Old Hickory Prods. Co. v. Hickory Specialties*, 366 FSupp. 913; and see *Menendez v. Perishable Distrib.*, 254 Ga. 300 (329 SE2d 149). The federal court in *Old Hickory* opines that Georgia's Civil Practice Rule 43 (c) (OCGA § 9-11-43 (c)) has superseded whatever might have been the Georgia rule with regard to the pleading and proof of foreign law. CPA Rule 43 (c) provides that upon a party's notice of intention to rely on certain foreign law, "[t]he court, in determining such law, may consider any relevant material or source . . . whether or not submitted by a party or admissible under the rules of evidence." This court has said that notwithstanding anything said to the contrary, where under CPA Rule 43 (c) notice of intent to rely on foreign law is given, "*[t]he court, in determining such law, may consider any relevant material or source. . . .*" *Smith v. Davis*, 121 Ga. App. 704 (3), 707 (175 SE2d 28) (cert. den.) But the question in this case is not whether the trial court in this case had the right to "do its own research," (see *Old Hickory Prods. Co.*, supra at 918-919); rather the question here is whether the trial court had a *duty* to adhere to current Tennessee appellate court decisions, notwithstanding the appellant's failure to plead and prove the specific decisions.

We find the trial court had the duty, as well as the right, to refer to and consider current Tennessee decisions even though they were not specifically pled and proved, and if that decisional law controls this case, the trial court's judgment holding the policy exclusion to be valid, must be reversed.

The reasons for any real or assumed historic inability of Georgia courts to judicially recognize the law of sister states, in the main, no longer exist. Chief among those reasons was "the difficulty of procuring foreign law materials," and the consequential reluctance felt by judges to decide cases "based on foreign state laws with which they are wholly unfamiliar." Id. p. 918. Today the laws of sister states are as accessible as our own. The right of judicial recognition becomes, by nature, a duty. Furthermore, there is historic precedent for it, not mentioned in the line of cases discussed in *Old Hickory*.

In 1902, the Supreme Court said: "Does not [OCGA § 24-1-4] place the laws of other States of the Union, 'as published by authority,' upon the same footing as to judicial recognition as laws of the United States and the laws of this State?" *Seaboard Air-Line R. v. Phillips*, 117 Ga. 98, 100 (43 SE 494). In that case, the court pointed out at p. 101 that the *inaccessibility of published authority* of "strictly foreign law" was what required it to be proved or authenti-

cated, but where a sister state's law is "published as authority," this in itself should be sufficient proof under § 24-1-4.

Even before that, in 1897, the full bench Supreme Court, citing *Chattanooga &c. R. Co. v. Jackson*, 86 Ga. 676 (13 SE 109) said: "Neither do we think that in a judicial investigation of this kind the courts should be held down to the rigid rule of considering only such proof of the laws of another State as has been formally tendered in evidence by one of the litigants. [In] . . . *Herschfeld v. Dexel*, 12 Ga. 582, this court held: 'The court on the trial of a cause may proceed on their knowledge of the laws of another State, and it is not necessary in that case to prove them. . . .' [In] *Chattanooga, Rome & Columbus R. Co. v. Jackson*, [supra], this court [said:] . . . '[W]e think it would be the right, if not the duty, of the courts to seek the highest sources of information at their command to ascertain the laws of such State on the subject and to give them force and effect according to their true intent and spirit whether or not such laws have been formally tendered in evidence. To this end they may resort to the published statutes of that State, or to the published decisions of its highest judicial tribunals.' " *Barranger v. Baum*, 103 Ga. 465, 480-481 (30 SE 524). That case was a criminal case, but we cannot see why enforcement of litigants' contract rights under *lex loci* should be regarded any differently.

We conclude that under CPA Rule 43 (c), (OCGA § 9-11-43 (c)), where a party, as here, gives notice of intent to rely on foreign law, the court in determining such law, "may consider any relevant material or source . . . whether or not submitted by a party or admissible under the rules of evidence"; and, under § 24-1-4, it was mandated that "the laws of Tennessee as published by authority" were to be judicially recognized without the introduction of proof. It was therefore not merely the trial court's *right* under these statutes to refer to current Tennessee law as "published by authority," whether or not the party produced it, but it was its *duty* to do so. *Barranger v. Baum*, supra; *Seaboard Air-Line R. v. Phillips*, supra, p. 98 (1) (b). Therefore such cases are binding, whether in fact the trial court knew of them.

Having so concluded, we find nevertheless that the three Tennessee cases, *Weir, Elam*, and *Dockins* are not "published by authority." They are merely "slip opinions." In procedural matters, as in all matters affecting remedy, the *lex fori* controls (*Menendez*, supra, p. 302). Rule 37 (b) of the Georgia Court of Appeals states: "No unreported opinion shall be cited as a physical or binding precedent of the Court." Although one or all of those decisions, when or if higher appealed may become the published law of Tennessee, it is not so now; it was not binding on the trial court, with *or without* introduction of proof, and is not binding on us.

What, then, is the published law of Tennessee as to the validity of the uninsured motorist exclusion in this case? In 1984 (two years after the passage of the 1982 legislative amendment which the *Weir v. Glens Falls Ins. Co.*, supra, and *Elam v. Protective Ins. Co.*, supra, slip opinions say invalidates this exclusion), the Court of Appeals of Tennessee in *Graves v. Tenn. Farmers Mut. Ins. Co.*, published in 671 SW2d 841 (application for permission to appeal denied), held the exclusion under examination in this case to be valid.

In its slip opinion in *Elam*, supra, in July 1987, the Court of Appeals of Tennessee, Western Section, noted that *Graves* was handed down in 1984, two years after the passage of the 1982 amendments (which would mean on its face the *Graves* court is deemed to have considered the 1982 amendment and held the exclusion valid nevertheless). However, the court in *Elam*, explaining that the dates were not important when *Graves* was written, then examined *the archival record* of the *Graves* case and discovered that in fact the loss for which recovery was sought occurred on April 4, 1977, "[h]ence the 1982 amendments should not have been and were not considered by the *Graves* court." This is how the *Elam* slip decision gets around the *Graves* decision, which is the *"published authority"* of Tennessee law holding the subject exclusion valid two years *after* the passage of amendments which *Elam* now says invalidates it. While the Tennessee appellate court is at liberty to examine its own archival records of appeals and accept, as controlling or determining in a prior decision, a fact which does not appear in the decision, we are not.

In our view, an appellate decision must stand for what it says on its face and no more, and must represent the same facts to the legal reader in 50 years in another state who is without access to the record behind it, as it does to us today. In any case, the date of the loss underlying the *Graves* lawsuit is a fact not before us, not "published as authority" except in *Elam*, which is not itself "published as authority," and therefore the fact is not subject to being judicially recognized in this state, under OCGA § 24-1-4. We conclude the *Graves* case is the only law of Tennessee on the subject exclusion that can be judicially recognized, and on the face of its decision, two years after the 1982 legislative amendment, this exclusion was held valid.

The trial court, therefore, did not err in holding the exclusion to be valid in the case below.

2. If the exclusion in Richard Swafford's policy were invalid for any reason, Richard Swafford could access his uninsured motorist coverage, but passengers Charles and Ronnie Swafford could not. Charles and Ronnie Swafford contend they are eligible for coverage by Richard's State Farm policy pursuant to this language in T. C. A. § 56-7-1201 (b): "With respect *to bodily injury to an insured* while occupying an automobile not owned by the injured party, the follow-

ing priorities . . . shall apply: (1) The uninsured motorist coverage on the vehicle in which the injured party was an occupant shall be . . . primary. . . . (2) Should that primary uninsured motorist coverage be exhausted due to the extent of compensatory damages, then the injured occupant may recover as excess *from the insurance on the vehicle owned by the insured that provides the highest limits of uninsured motorist coverage.* In no instance shall more than one (1) coverage from more than one (1) uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant." (Emphasis supplied.)

Appellants contend Richard Swafford is "the insured that provides the highest limits of uninsured motorist coverage." The appellee State Farm replies that the Tennessee legislature could not conceivably have meant, by this language, that the policy of the person in a vehicle who has the most coverage would cover other occupants of a vehicle who had no uninsured motorist coverage. We agree with this assessment by appellee State Farm.

T. C. A. § 56-7-1201 (a) provides, as to the purpose and policy of the act, that: "Every automobile liability insurance policy delivered, issued . . . or renewed in this state . . . shall include uninsured motorist coverage . . . for the protection *of persons insured thereunder.* . . ." Beyond doubt, on the face of the statutory language, the legislature did not intend by any unclear language in T. C. A. § 56-7-1201 (b) (2) to extend coverage of any insured's uninsured motorist coverage to persons not *"insured thereunder."* (Emphasis supplied.)

Where the Tennessee statute provides at § 56-7-1201 (b) (2) that "the injured occupant may recover as excess from the *insurance on the vehicle owned by the insured* that provides the highest limits . . ." the reference to *"the insured"* is first qualified in § (b) of the statute by the words, *"with respect to the bodily injury to an insured."* (Emphasis supplied.) Therefore, it is the *injured insured* who may recover such excess from his own insurance with the highest limits. An "injured party" if he is not "insured" under any policy cannot recover under that policy. This is consistent with the policy statement at T. C. A. § 56-7-1201 (a) that uninsured coverage in an insurance contract is for the protection "of persons insured thereunder." Charles and Ronnie Swafford are not persons insured under Richard Swafford's policy. Therefore, they may not recover from his policy in excess of the primary coverage of Mrs. Guthrie's policy.

3. Appellants Richard Swafford and Charles and Ronnie Swafford contend the following quoted language in T. C. A. § 56-7-1201 (d) entitles *each* of them to recover under Mrs. Guthrie's State Farm policy the excess of her policy limits over the total of tortfeasor Bell's liability coverage: "(d) The limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that

coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured."

That is, appellants contend that after the tortfeasor Bell's total liability coverage is exhausted ($15,000/$30,000) to the first injured party, Mrs. Guthrie's limits are again applicable to each remaining injured party, in full, since Bell's limits were exhausted by the recovery of the first injured party and, as to the others, there is no more available liability to deduct from Mrs. Guthrie's policy limits. Appellants conclude: "Until the damages [of all parties] are known, it cannot be said that only $10,000/$20,000 is available from the Guthrie policy. If the damages to all occupants of the Guthrie vehicle so warrant, the full coverage of the Bell, Guthrie and Richard Swafford policies could be paid with no duplication of coverage."

This strained argument is without merit. All these party plaintiffs are not entitled to the "full coverage of the Bell, Guthrie, and [Richard] Swafford policies with no duplication of coverage." Charles and Ronnie Swafford may not recover under Richard's policy at all (see Division 2). But as regards their right to recover under the primary policy (Mrs. Guthrie's), the same rationale we used in Division 2 holds true here: if they qualify as an insured, if *each* of them qualifies as an insured, under Mrs. Guthrie's policy, they would each be entitled to collect as if each were able to recover from Bell's liability policy, or other sources of compensation. No rationale has been suggested that would authorize us to conclude that once one injured party has *collected* all of Bell's liability, the others may recover from Guthrie's policy without any deduction. The statutory word used is *collectible,* not *collected.* We cannot be sure Bell's liability will be "exhausted" by payment to one injured party. Since there is, as appellants say, no way to know at this point how much is *"collectible"* in liability from Bell, or elsewhere by each party insured under Mrs. Guthrie's uninsured coverage, the thing to do is see how much each may collect in liability elsewhere, and then deduct this from the amount of Mrs. Guthrie's policy. The terms of the tortfeasor Bell's policy will determine whether and to what extent his limits are "exhausted" by payment to one party, and the terms of Mrs. Guthrie's policy will determine to what extent each injured party may collect from her uninsured coverage. The appellants' whole argument supposes that Bell's liability policy will be "exhausted" by payment to one, and that is not something we can assume.

The trial court did not err in ruling that Charles and Ronnie Swafford are not insureds under Richard's policy, and in holding, as it seems to have held, that *if* Bell's liability policy limits are exhausted, each person insured under Mrs. Guthrie will be entitled only to an

excess over what was *"collectible"* under all liability sources.
*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JUNE 3, 1988 —
REHEARING DENIED JULY 7, 1988 —

*Warren N. Coppedge, Jr., Susan W. Bisson, Terry J. Miller,* for appellants.
*James T. Fordham, R. Kevin Silvey,* for appellee.