### A93A0010. MEEKER v. EUFAULA BANK & TRUST.
(431 SE2d 475)

BLACKBURN, Judge.

This appeal arises from an action to collect a deficiency owed by the appellant to the appellee, the Eufaula Bank & Trust, following foreclosure on certain real property located in Eufaula, Alabama.

From March 1987 until October 1989, the appellant executed a series of promissory notes and renewal notes in favor of the appellee, which were secured by two mortgages, totalling $23,000, on the property in question. The last note was executed on October 1, 1989, and provided that payment of the principal amount of $25,253.62 was due on March 30, 1990; interest was due quarterly. The note also provided that default would occur upon failure to make a payment on time or in the amount due.

On December 30, 1989, the appellee billed the appellant for the interest due on the note. Payment of $772.26 was tendered by check on January 31, 1990, but the check was dishonored due to insufficient funds. Although the appellee was not required to give notice of default under the note, it attempted to do so by registered mail, but the notice was returned unclaimed. The appellee then began foreclosure

proceedings, which culminated in the appellee's purchase of the property for $17,500 on March 26, 1990. The sale was never confirmed. Shortly thereafter, the appellee sold the property to the adjacent property owner for the same price.

Subsequently, the appellee commenced this action to collect the deficiency and $551 owing on an unsecured line of credit, and at the trial of the matter obtained a directed verdict for a total of $10,058.85. This appeal followed.

1. Six days before the scheduled trial in the matter, the appellant moved for leave to file a counterclaim alleging wrongful foreclosure, but the trial court denied that motion. The appellant contends that leave to assert the counterclaim should have been granted in the interest of justice.

OCGA § 9-11-13 (f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Even if "oversight, inadvertence, or excusable neglect" are absent, a trial court should allow the counterclaim when justice requires; however, "[w]hether justice requires the grant of leave to set up an omitted counterclaim is a matter which addresses itself to the sound discretion of the trial court. [Cit.]" *White v. Fidelity Nat. Bank*, 188 Ga. App. 539, 540 (373 SE2d 640) (1988).

The basis for the counterclaim stated by the appellant was that a wrongful foreclosure had occurred because the sale took place on March 26, 1990, four days before the principal was due under the note. The appellant explained her failure to assert the counterclaim earlier by stating that until the appellee filed its brief in support of a motion for summary judgment on June 26, 1992, she was unaware that the appellee's basis for recovery was the promissory note with the due date of March 30, 1990. The appellant's explanation, however, is contradicted by the record, in that a copy of that note was attached to the appellee's first amendment to its complaint filed on September 17, 1991. Further, the explanation overlooks the fact that the actual default authorizing foreclosure was the appellant's failure to pay the interest due under the note. Under these circumstances, the trial court did not abuse its discretion in disallowing the appellant's assertion of the counterclaim.

2. At the close of the evidence, both parties moved for directed verdict, and the trial court granted the appellee's motion. The appellant contends that the trial court instead should have directed a verdict for her, because the appellee had failed to prove the Alabama law upon which it relied to prove its right to seek a deficiency without having the foreclosure sale confirmed.

Three separate Code sections pertain to proof of laws of another

state. OCGA § 24-7-24, dealing with the authentication of foreign laws or judicial records, provides perhaps the most certain method of producing admissible evidence of another state's law. OCGA § 24-1-4 allows judicial cognizance, without the introduction of such proof, of the laws of other states "as published by authority." OCGA § 9-11-43 (c), the most recently enacted of the three statutes, requires reasonable notice by the party relying upon foreign law, and provides that "[t]he court, in determining such law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence. The court's determination shall be treated as a ruling on a question of law."

Whether judicial notice of a foreign law may be taken under OCGA § 24-1-4 usually depends upon a determination of the requirement "as published by authority." In *Carter v. Graves*, 206 Ga. 234 (56 SE2d 917) (1949), the Supreme Court held that the Pacific Reporter was not shown to be such a publication as is published by authority so as to authorize the trial court to take judicial notice of California court decisions contained therein. However, in *Smith v. Davis*, 121 Ga. App. 704, 707 (3) (175 SE2d 28) (1970), this court found that *Carter* had been superseded by the 1968 enactment of Code Ann. § 81A-143 (c) (now OCGA § 9-11-43 (c)), and held that "the trial court was authorized to consider the reports of Florida cases appearing in the Southern Reporter as a relevant source of Florida law to determine the substantive law applicable. . . ."

In further considering the applications of OCGA §§ 24-1-4 and 9-11-43 (c) in *Swafford v. Globe American Cas. Co.*, 187 Ga. App. 730 (371 SE2d 180) (1988), this court noted that the historic basis for requiring proof or authentication of foreign law, i.e., the inaccessibility of published authority of such foreign law, no longer existed. We went on to hold that where a party gives reasonable notice of intent to rely on foreign law, the trial court has a duty, as well as the right, to refer to and consider the foreign law "as published by authority," whether or not the party produced it. Further, although slip opinions of appellate decisions from another state did not meet the requirement of "as published by authority," court decisions of that state published in the Southwestern Reporter Second did. Id. at 733-734.

In summary, from the above it appears that authentication of foreign law pursuant to OCGA § 24-7-24 renders that evidence of foreign law admissible, and perhaps constitutes the most certain method of proving foreign law, but it is not the exclusive means of introducing foreign law in a case. Under OCGA § 24-1-4, a trial court has a duty to take judicial notice of foreign law if "published by authority," without introduction of any proof of that law. Further, under OCGA § 9-11-43 (c), where a party gives reasonable notice of intent to rely on foreign law, the trial court may consider any relevant material or

source, including testimony, whether or not submitted by a party or admissible in evidence.

In the instant case, it was undisputed that the appellee did not have the foreclosure sale confirmed. Georgia law allows no action to collect a deficiency unless the person who instituted the nonjudicial foreclosure proceeding timely reported the sale for confirmation. OCGA § 44-14-161 (a). For that reason, the appellee's claim for a deficiency in this case depended upon the application of Alabama law and the absence in that Alabama law of any requirement for confirmation of a nonjudicial foreclosure sale.

The appellee did not prove the pertinent Alabama law by authentication under OCGA § 24-7-24. Rather, it presented copies of the Code of Alabama regarding mortgages and copies of two decisions of the Alabama Supreme Court published in the Southern Reporter, and requested that the trial court take judicial notice of the Alabama law. The appellant concedes that the appellee gave reasonable notice of its intent to rely upon Alabama law, and under *Swafford v. Globe American Cas. Co.*, supra, and *Smith v. Davis*, supra, the trial court properly took judicial cognizance of the substantive Alabama law contained in the Alabama Code sections and Supreme Court decisions presented to it by the appellee.

The appellant contends that the Alabama statutes and court decisions neither indicate nor contraindicate a requirement of confirmation of a nonjudicial foreclosure sale, and thus provide no legal foundation for finding that Alabama law does not require confirmation prior to seeking a deficiency. However, as pointed out by the appellee, with regard to the Alabama statutes, the apparent reason why no mention is made of the need for a confirmation (or lack thereof) is that no such requirement exists. Similarly, in *Continental Cas. Co. v. Brawner*, 148 S 809, 811 (Ala. 1933), the Alabama Supreme Court held that "if a sale is made in strict conformity with the power contained in the mortgage or deed of trust, and enough is not realized to satisfy the claims of the mortgage or trust deed, an action may be maintained, in a court of law, against the mortgagor . . . for the deficiency." In short, the Alabama statutes and Supreme Court decisions before the trial court authorized finding that Alabama law did not require confirmation before seeking a deficiency.

The appellant also contends that even if Alabama law applied, the foreclosure sale should be invalidated because it did not comply with that law, and because there was such a great disparity between the price obtained at the sale and the fair market value of the property. With regard to the procedures required for a nonjudicial foreclosure, the evidence showed that the appellee gave notice of the sale by newspaper publication once a week for three consecutive weeks, and that the sale occurred in the county in which the property was lo-

cated, as required by the Code of Alabama §§ 35-10-7 and 35-10-8.

Concerning the foreclosure sale price, " '[a] sale under a power contained in a mortgage or trust deed is always presumed to be regular and valid, and mere inadequacy in the price bid does not in itself invalidate or affect the sale, otherwise properly conducted, unless it is so great as to shock the conscience of the court, and especially in the absence of a showing that a larger price could be obtained on a resale." *Hunter-Benn & Co. v. Bassett Lumber Co.*, 139 S 348, 354 (Ala. 1932). The foreclosure sale price of $17,500 obtained by the appellee could not reasonably shock the conscience of any court, under the evidence adduced in this case.

The appellant testified that she purchased the property for $20,000, paying $5,000 down and financing the remainder. At the time of the original loan of $15,000 secured by the property, the property was appraised at $23,500, provided certain repairs be made (roof repair, exterior paint, and cleaning). The adjacent property owner testified that he had offered $15,000 for the property at the foreclosure sale, but the offer had been rejected as too low. Ultimately, he decided to buy the property for the same price paid by the appellee at the sale, because the property was worth a little more to him since it was adjacent to his other property. His description of the property revealed that it needed a great deal of repair. Specifically, the roof of the house and the front and back porches badly needed repair, and interior repairs had only been started. As evidence of valuation of the property, the appellant offered only a hearsay statement that the house had been appraised at $33,000 before the foreclosure.

The appellant presented no defense to the indebtedness asserted by the appellee. In fact, in testifying about her unsuccessful efforts to sell the property prior to the foreclosure, she acknowledged that she had realized that she would have to sell the property "to make clear with the bank." Accordingly, there being no genuine factual or legal issues about the applicability of Alabama law, the absence of any Alabama requirement for confirmation of a nonjudicial foreclosure sale prior to seeking a deficiency, or the appellant's indebtedness to the appellee, the trial court properly directed a verdict for the appellee.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED MAY 25, 1993.

*Peter G. Williams*, for appellant.

*Cecil M. Cheves, Page, Scrantom, Harris & Chapman, Gary O. Bruce*, for appellee.