A98A1561. CITY OF COLLEGE PARK v. SHERATON SAVANNAH CORPORATION.
(509 SE2d 371)

McMURRAY, Presiding Judge.

The City of College Park ("the City") filed this action against Sheraton Savannah Corporation ("Sheraton") to recover for kitchen equipment it provided for use in a hotel which adjoins the Georgia International Convention and Trade Center ("the Civic Center"). The City alleges Sheraton refused to return the kitchen equipment after it purchased the hotel and now refuses to pay for it under the terms of the prior hotel proprietor's 1983 kitchen lease agreement. Sheraton denied liability, moved for summary judgment and opposed the City's motion for summary judgment, asserting that it leased the hotel's kitchen area from the City in 1993 under an agreement which superseded the prior hotel proprietor's 1983 kitchen lease agreement and does not require payment for the kitchen equipment.

The evidence, construed in a light most favorable to the City, reveals the following: During the early 1980s, the College Park Business & Industrial Development Authority ("the Authority") financed and developed the Civic Center and the Civic Center's adjoining hotel. Although the Authority owned both facilities, the Authority leased the Convention Center to the City and the hotel property to several limited partnerships. Because the hotel's kitchen, meeting room and four ballrooms are on Civic Center property, the City subleased these areas (in six "facilities leases") to different limited partnerships. The kitchen facilities lease was executed in 1983 between the City and Airport Hotel Associates #6, Ltd. ("Partnership 6") and requires Partnership 6 to pay separate rent for the kitchen space and the kitchen's equipment.

In the early 1990s, Sheraton expressed interest in purchasing the Civic Center hotel. During negotiations, Sheraton suggested consolidating the six facilities leases and posted a letter to the City's attorneys which (according to Sheraton's attorney) included "a red-lined copy" of a proposed consolidated lease indicating "the changes from the [facilities leases]." This representation, however, was not completely accurate as the proposed consolidated lease which Sheraton's attorney mailed to the City's attorneys did not highlight the absence of a rental payment obligation (as required by Partnership 6's facilities lease) for the kitchen equipment. As a result, Sheraton purchased the hotel from the authority in 1993 and leased the

kitchen area from the City under an "AMENDED, RESTATED AND CONSOLIDATED LEASE" ("the 1993 Amended Lease") which did not include Sheraton's assumption of Partnership 6's equipment rental obligation. Sheraton thereafter refused the City's demands to pay for or return the hotel's kitchen equipment.

The trial court granted Sheraton's motion for summary judgment, finding that the 1993 Amended Lease "replaced and superseded the 1983 facilities leases . . . and that as a matter of law the 1993 Amended Lease governs the claims now before the Court." The trial court also found that, since the City "retained its own counsel to advise it in the transaction at issue[, there is,] as a matter of law, no basis for reformation of the 1993 Amended Lease based on the apparent unilateral mistake of the City." The trial court concluded that "quantum meruit is not available as a remedy to the City because the 1993 Amended Lease governs the entire relationship between the parties regarding the leased facilities." The trial court did not address the City's claim for tortious conversion or the City's assertion that Sheraton violated Georgia's Racketeering Influenced & Corrupt Organizations Act.

This appeal followed entry of the trial court's summary judgment order and a judgment dismissing the City's complaint. *Held*:

1. Contrary to the City's first enumeration of error, the trial court was not required to enter a more detailed summary judgment order. See OCGA § 9-11-56 (a); *Fudge v. Colonial Baking Co. of Atlanta*, 186 Ga. App. 582 (1) (367 SE2d 814).

2. Although Sheraton assumed Partnership 6's 1983 kitchen lease when it purchased the hotel, Sheraton's 1993 "AMENDED, RESTATED AND CONSOLIDATED LEASE" with the City provides that "[t]here are no representations, covenants, warranties, promises, agreements, conditions or undertakings, oral or written, between [the City] and [Sheraton] other than herein set forth." This agreement also provides that the City entered a kitchen lease with Partnership 6 on September 1, 1983; that this lease was assigned to Sheraton "as of the date hereof, and [that] the parties wish to amend, restate and consolidate the Prior Leases[, including Partnership 6's kitchen lease,] in the form of this Lease[.]" These provisions clearly and unambiguously express the parties' intent for the 1993 Amended Lease to supersede all of the facilities leases — including Partnership 6's 1983 kitchen lease. We, therefore, affirm the trial court's finding that the 1993 Amended Lease replaced and superseded Partnership 6's 1983 kitchen lease. Accordingly, since it is undisputed that the 1993 Amended Lease does not require Sheraton to pay rentals for the hotel's kitchen equipment, the trial court did not err in granting Sheraton's motion for summary judgment and denying the City's motion for summary judgment with regard to the City's breach of

contract claim. "Where no matter of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the court." *Crooks v. Crim*, 159 Ga. App. 745, 748 (285 SE2d 84).

3. The City contends that Sheraton's attorney's allegedly deceptive letter to the City's attorneys (regarding the "redlined copy" of Sheraton's proposed consolidated lease), along with proof that Sheraton's law firm represented the City during an earlier stage of the Civic Center project, raises genuine issues of material fact as to the sort of misplaced confidence and fraud which would authorize reformation of the 1993 Amended Lease. See OCGA § 23-2-29. We do not agree. While a fiduciary bond may remain between the City and Sheraton's law firm as a result of a prior attorney-client relationship, any possible violation of this bond provides no basis for reforming the 1993 Amended Lease because there is no indication that Sheraton was a party to its attorney's alleged duplicity.

"Reliance upon the representations made by the other party is not grounds for cancellation, reformation or the defeat of an action based on the contract absent proof of emergency, fraud or a fiduciary or confidential relationship with the party making the representation. *Conklin v. Liberty Mut. Ins. Co.*, 240 Ga. 58 (239 SE2d 381) (1977)." *Malin v. Servisco, Inc.*, 172 Ga. App. 418 (1) (323 SE2d 278). Since there is no proof in the case sub judice of an occurrence of some type which prevented the City from reading the 1993 Amended Lease before the City executed this document, the trial court did not err in granting Sheraton's motion for summary judgment with regard to the City's equitable reformation claim.

4. The City next contends the trial court erred in granting Sheraton's motion for summary judgment as to its quantum meruit claim. We agree. When a party deliberately retains property which is valuable to another and there is no contract for the property, a promise is implied to pay in quantum meruit. See OCGA § 9-2-7, and *Stowers v. Hall*, 159 Ga. App. 501, 502 (3) (283 SE2d 714). Sheraton argues that quantum meruit recovery is not available in the case sub judice because the 1993 Amended Lease governs its obligations to the City. This argument is belied by the undisputed fact that the City's kitchen equipment is not mentioned in the 1993 Amended Lease. Sheraton also argues that the trial court properly disposed of the City's quantum meruit claim because the City failed to prove that Sheraton was in possession of any of the disputed kitchen equipment.

Although the City has not proved the existence of each and every item of kitchen equipment that remained in the hotel's kitchen area when Sheraton took possession of the premises, there is proof that the City equipped the hotel's kitchen in 1983 at a cost of $400,000. This evidence, and the absence of proof that this equipment was removed from the hotel's kitchen before Sheraton took possession of

the premises, raises genuine issues of material fact as to the City's right to recover in quantum meruit for whatever equipment remains.

5. We also hold that the disputed facts and the City's unchallenged pleadings in the case sub judice raise genuine issues of material fact as to the City's claim for tortious conversion. "In an action for conversion, proof of title to the property in the plaintiff, right of possession in the plaintiff, possession in the defendant, demand for possession, refusal to surrender, and value of the property, . . . make a prima facie case. [Cits.]" *Buice v. Campbell*, 99 Ga. App. 334, 335 (3) (108 SE2d 339).

6. The City offers no citation of authority or meaningful argument in support of its claim that the trial court erred in granting Sheraton's motion for summary judgment as to the City's claim under Georgia's Racketeering Influenced and Corrupt Organizations Act. Accordingly, this assertion is deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2). *Martin v. State*, 179 Ga. App. 551, 555 (8) (347 SE2d 247).

*Judgment affirmed in part and reversed in part. Blackburn and Eldridge, JJ., concur.*

DECIDED NOVEMBER 16, 1998 —
RECONSIDERATION DENIED DECEMBER 3, 1998.

*Glaze & Glaze, Kirby A. Glaze, Thomas M. Conway, Bruce R. Vail*, for appellant.

*Sutherland, Asbill & Brennan, John H. Fleming, Rebecca L. Burnaugh*, for appellee.