A08A0103. KRAMER v. YOKELY et al.
(662 SE2d 208)

BERNES, Judge.

In this legal malpractice action, plaintiff Edward E. Kramer appeals the trial court's grant of summary judgment to defendants Daryl Von Yokely and Kenneth Muhammad, attorneys who represented Kramer in an unsuccessful federal case brought pursuant to 42 USC § 1983. Kramer contends that the trial court erred by (1) considering and relying upon the district court order entered in the

federal case; (2) ruling as a matter of law that Kramer had failed to show that his attorneys' alleged errors proximately caused the outcome in the federal case; and (3) ruling that the voluntary dismissal of certain defendants and abandonment of certain claims in the federal case would not support a malpractice claim as a matter of law. For the reasons discussed below, we affirm.

> A party is entitled to summary judgment if that party demonstrates that no genuine issue of material fact remains and he is entitled to judgment as a matter of law. The party who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. We review a grant of summary judgment de novo, considering the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Punctuation and footnotes omitted.) *Gibson v. Halpern Enterprises*, 288 Ga. App. 790 (655 SE2d 624) (2007). See OCGA § 9-11-56 (c).

Viewed in this light, the record shows that the underlying federal case arose out of Kramer's pretrial detention in the Gwinnett County Detention Center ("GCDC") on pending child molestation charges. On August 25, 2000, Kramer was booked into the GCDC and informed detention officials that he suffered from several chronic medical conditions, including arthritis, psoriasis, sleep apnea, and asthma. As a result of his deteriorating medical condition, Kramer was released on bond on November 6, 2000. Nevertheless, on November 16, 2000, Kramer again was booked into the GCDC after he allegedly violated the provisions of his bond. Because his medical condition continued to worsen, however, Kramer was released on January 24, 2001 to go on house arrest.

After his release, Kramer hired an attorney to pursue federal claims against the GCDC and detention center officials for allegedly failing to provide him with adequate medical care during his confinement. Yokely and Muhammad later agreed to serve as co-counsel in the representation.

Kramer filed an action under 42 USC § 1983 in the United States District Court, Northern District of Georgia, against Gwinnett County, the sheriff of Gwinnett County, Prison Health Services,

Inc. ("PHS"), and a PHS employee (the "Federal Defendants").[1] In his complaint as amended, Kramer alleged that the Federal Defendants were deliberately indifferent to his serious medical needs in violation of the United States Constitution by, among other things, failing to take him to several offsite doctor's appointments; not allowing him to use the GCDC's baptismal pool for bathing; being late in obtaining lab work; failing to replace bloody bedding and clothing; failing to properly assist him after he slipped and fell during a detention center drill; and prescribing a different psoriasis medication than what had been prescribed by his personal rheumatologist.

The Federal Defendants subsequently moved for summary judgment, which the district court granted in a published opinion. See *Kramer v. Gwinnett County*, 306 FSupp.2d 1219 (N.D. Ga. 2004), aff'd, 116 Fed. Appx. 253 (2004). In the opinion, the district court made several rulings separate from the substantive merits of the summary judgment motions. First, the district court ruled that by failing to respond to many of the Federal Defendants' arguments, Kramer had abandoned any claims other than that detention center officials were deliberately indifferent to his serious medical needs. Id. at 1221 (I). Second, the district court concluded that Kramer had failed to comply with the local rules in responding to the Federal Defendants' statement of undisputed material facts, such that all of the Federal Defendants' "numbered facts [were] deemed admitted." Id. at 1221 (II). Third, the district court struck four of Kramer's exhibits submitted in opposition to summary judgment, including documents purporting to be Kramer's medical records from the GCDC for lack of authentication, although the court noted that those "very same documents" were part of the record since they had been submitted and properly authenticated by the Federal Defendants as part of their own motions. Id. at 1224 (III) (B) (1). One of the remaining exhibits struck by the district court was the affidavit of Gerald Edward Blackford, Jr., whom Kramer had failed to disclose as a potential witness in his discovery responses. Id. at 1224-1225 (III) (B) (1).

Despite these deficiencies, the district court ruled that it would reach the merits and would fully consider the facts presented by Kramer in order to determine whether a genuine issue of material fact existed justifying a jury trial on his constitutional claim of inadequate medical care. *Kramer*, 306 FSupp.2d at 1221-1222 (II). In so ruling, the district court noted that the deliberate indifference

---

[1] The complaint originally named three physicians and two other county officials as defendants, but these individuals were later voluntarily dismissed from the case. The complaint also originally alleged a claim for assault and battery under 18 USC § 242, a federal criminal statute, but that claim was later abandoned on summary judgment.

standard applicable to pretrial detainees was governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, not the Eighth Amendment as argued by Kramer. Id. at 1226. The district court then proceeded to analyze the factual record in light of that standard, ultimately concluding that while Kramer may have claims sounding in negligence, none of the evidence would "support a finding that [the Federal] Defendants' actions rose to the constitutionally proscribed level of deliberate indifference." Id. at 1226-1227 (IV). Accordingly, the district court granted summary judgment in favor of the Federal Defendants. Id. at 1227-1228 (V).

The Court of Appeals for the Eleventh Circuit affirmed the district court in a per curiam decision. *Kramer v. Gwinnett County*, 116 Fed. Appx. 253 (2004). Thereafter, Kramer filed the instant legal malpractice action against Yokely and Muhammad, two of the three attorneys who represented him in the federal case. Yokely and Muhammad moved for summary judgment based on a lack of proximate cause, contending that Kramer could not establish that but for his attorneys' alleged errors, the outcome of the federal case would have been different. The trial court granted the summary judgment motion. The trial court found that although Kramer's attorneys had been deficient in their representation, the federal district court's opinion made clear that "even if the attorneys had pled and prosecuted the case properly, no recovery would be had." As such, the trial court concluded that Kramer "cannot show that he would have been successful on the underlying claim" and thus "cannot prevail on his malpractice claim here." Kramer now appeals.

1. Although his enumeration of error is unclear, Kramer appears to contend that the trial court erred in considering and relying upon the federal district court's summary judgment order to support its conclusion that Kramer could not establish proximate cause. In this respect, Kramer contends that the federal district court's order was not properly certified and thus could not serve as competent evidence of what occurred in the federal case. We disagree.

Under OCGA § 24-1-4, a trial court shall take judicial notice of a judicial opinion from a foreign jurisdiction if "published by authority . . . without the introduction of proof," so long as a party gives notice of its intent to rely upon the foreign law. See *P.G.L. & C.C. Employees Credit Union v. Kimball*, 221 Ga. App. 108, 109 (470 SE2d 501) (1996); *Meeker v. Eufaula Bank & Trust*, 208 Ga. App. 702, 704 (2) (431 SE2d 475) (1993). Here, the federal district court's order was published in the Federal Supplement Second Series and thus was "published by authority." See *Meeker*, 208 Ga. App. at 705 (2) (decisions of Alabama Supreme Court published in the Southern

Reporter were "published by authority"); *Swafford v. Globe American Cas. Co.*, 187 Ga. App. 730, 734 (1) (371 SE2d 180) (1988) (decision of Tennessee Court of Appeals published in Southwestern Reporter Second Series was "published by authority"). And, the very nature of the present action — a legal malpractice suit predicated on the federal case — meant that all parties and the trial court necessarily had notice that the federal district court's opinion would be relied upon. See *Kimball*, 221 Ga. App. at 109; *Samay v. Som*, 213 Ga. App. 812, 815 (2) (c) (446 SE2d 230) (1994). It follows that the trial court was entitled to judicially recognize and rely upon the federal district court's order in granting summary judgment to Yokely and Muhammad.

2. Kramer next argues that the trial court erred in ruling as a matter of law that Kramer had failed to show that his attorneys' alleged errors were the proximate cause of damages to him. According to Kramer, he had viable legal malpractice claims because in the federal case his attorneys (a) failed to comply with the Local Rules for the Northern District of Georgia in responding to the Federal Defendants' statement of undisputed facts; (b) failed to have his medical records from the GCDC properly authenticated; (c) failed to list Gerald Edward Blackford, Jr., as a potential witness in discovery responses; (d) erroneously argued that the Eighth Amendment to the United States Constitution provided the applicable standard of liability; (e) failed to secure expert testimony to support Kramer's deliberate indifference claim; and (f) failed to submit the affidavit of a registered nurse who had evaluated Kramer.[2]

> To prevail on a legal malpractice claim, a client must prove that (1) he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client. To establish proximate cause, the client must show that but for the attorney's error, the outcome would have been different; any lesser requirement would invite specu-

---

[2] Kramer also contends that his attorneys erred by failing to submit the affidavits of David Foster and David Culpepper in opposition to summary judgment in the federal case. The uncontroverted evidence reflects, however, that Foster's affidavit was part of the summary judgment record before the federal district court. As to Culpepper's affidavit, Kramer has failed to supplement the record to include it, although he promised to do so in his appellate brief filed several months ago. "It is the primary responsibility of the appropriate parties and not this court to ensure that all documents relevant to the disposition of an appeal be duly filed with the clerk of this court prior to the issuance of our appellate decision." (Citation and punctuation omitted.) *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. 51, 53 (1) (572 SE2d 664) (2002). Consequently, we are precluded from reviewing Culpepper's affidavit and any argument made by Kramer that is predicated on it. Id. at 53-54 (1).

lation and conjecture. The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the client on the issue of proximate cause.

(Footnote omitted.) *Millsaps v. Kaufold*, 288 Ga. App. 44, 44-45 (653 SE2d 344) (2007). Guided by these principles, we conclude that the trial court properly ruled that Kramer could not show that the element of proximate cause had been met as to any of his attorneys' alleged errors in the federal case.

(a) It is true, as Kramer asserts, that his attorneys failed to comply with the Local Rules for the Northern District of Georgia in responding to the Federal Defendants' statement of undisputed facts, leading the district court to rule that all of the Federal Defendants' "numbered facts [were] deemed admitted." *Kramer*, 306 FSupp.2d at 1221 (II). Nevertheless, the district court expressly stated that it would proceed to reach the merits and fully consider the facts presented by Kramer in determining whether to grant or deny summary judgment. Id. at 1221-1222 (II). Kramer therefore cannot establish proximate cause as a matter of law; even if his attorneys had complied with the local rules and properly responded to the Federal Defendants' statement of undisputed facts, it would not have changed the outcome of the federal case. See *Goodman v. Glover*, 247 Ga. App. 829, 830 (544 SE2d 214) (2001) (proximate cause cannot be shown when the court decided the case on the underlying merits and addressed the very issue "that [the plaintiff] claims his former defense counsel waived").

(b) Kramer likewise focuses on his attorneys' failure to have his medical records from the GCDC properly authenticated, which led the federal district court to strike his exhibits purportedly containing those documents. *Kramer*, 306 FSupp.2d at 1224 (III) (B) (1). Yet, the federal district court noted that the "very same documents" were part of the summary judgment record because they had been authenticated by the Federal Defendants and were submitted as part of their motions for summary judgment. Id. As such, even if Kramer's attorneys had ensured the proper authentication of the medical records, it would have made no difference to the summary judgment record and thus would have had no impact on the federal district court's decision. Given that "the evidence and record [show that] the result would have been the same" irrespective of the attorneys' alleged error, proximate cause could not be proven as a matter of law. *Alta Anesthesia Assoc. of Ga. v. Bouhan, Williams & Levy, LLP*, 268 Ga. App. 139, 143 (1) (601 SE2d 503) (2004).

(c) Additionally, Kramer emphasizes that his attorneys failed to list Blackford as a potential witness in discovery responses, which resulted in the federal district court striking Blackford's affidavit

and refusing to consider it as part of Kramer's opposition to summary judgment. *Kramer*, 306 FSupp.2d at 1224-1225 (III) (B) (1). Blackford was a detainee at GCDC during the same period as Kramer, and his affidavit contains several allegations concerning how Kramer was treated during his confinement there. But, the allegations made by Blackford in his affidavit are the same as the allegations made by two other GCDC detainees in affidavits that were part of the summary judgment record before the federal district court. Hence, the allegations contained in Blackford's affidavit were cumulative of other evidence that had been submitted and was considered by the federal district court in ruling on the summary judgment motions, and so proximate cause again could not be established. See *Kidd v. Ga. Assn. of Educators*, 263 Ga. App. 171, 173-174 (587 SE2d 289) (2003) (plaintiff could not show proximate cause based on his attorney's alleged error in defending him at an administrative hearing, where the record demonstrated that the hearing board was aware of and had considered the same information that the attorney had allegedly failed to place before the board). Cf. *Gordillo v. State*, 255 Ga. App. 73, 77 (3) (b) (ii) (564 SE2d 486) (2002) (ineffective assistance claim failed because no prejudice to the outcome of the proceedings could be shown based on defense counsel's failure to introduce evidence "simply cumulative of other evidence properly admitted").

(d) Kramer further points out that his attorneys erroneously argued to the federal district court that the Eighth Amendment to the United States Constitution provided the applicable standard of liability for his claim of inadequate medical care. *Kramer*, 306 FSupp.2d at 1226 (IV). The Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, applies to pretrial detainees. See *Hamm v. DeKalb County*, 774 F2d 1567, 1572 (III) (A) (1) (11th Cir. 1985). Significantly, however, "the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Id. at 1574 (III) (A) (1). Recognizing this point, the federal district court proceeded to consider Kramer's medical treatment claims under the deliberate indifference standard, despite his attorneys' mistake in stating that the claims arose under the Eighth Amendment rather than the Due Process Clause. *Kramer*, 306 FSupp.2d at 1226 (IV). Accordingly, Kramer cannot show that his attorneys' error in failing to properly state which constitutional provision applied made any difference to the outcome of the federal case.

(e) Kramer also focuses on his attorneys' alleged failure to secure expert testimony to support his deliberate indifference claim in the federal case. In support of his contention, Kramer submitted the affidavit of Dr. Glenn R. Parris, his personal rheumatologist. Kramer

claims that an affidavit from Parris should have been submitted by his attorneys in opposition to summary judgment and would have changed the federal district court's ruling.[3] We disagree because the opinions and impressions of Dr. Parris — reflected in multiple documents contained in Kramer's GCDC medical records and in Dr. Parris' transcribed testimony at a November 6, 2000 bond hearing — were part of the summary judgment record and thus were considered by the federal district court. Kramer cannot show that the submission of an affidavit by Dr. Parris containing those same opinions and impressions would have affected the outcome in the federal case, and, therefore, cannot prove proximate cause. See *Kidd*, 263 Ga. App. at 173-174.

(f) Finally, Kramer emphasizes that his attorneys failed to submit in the federal case the affidavit of Sherry Henry, a registered nurse who had evaluated Kramer while he was confined at the GCDC. In her affidavit, Henry describes Kramer's deteriorating medical condition during his confinement and goes on to opine that detention center officials breached the standard of care in failing to provide Kramer proper medical treatment so as to prevent the deterioration in his condition.[4] The same information about Kramer's deteriorating medical condition, however, was contained in his GCDC medical records, the affidavits of the two detainees discussed in Division 2 (c), and the transcript of the November 6, 2000 bond hearing, all of which were part of the summary judgment record before the federal district court. Since the district court was aware of the same information contained in Henry's affidavit at the time the court ruled on the summary judgment motions, the affidavit would not have changed the outcome. Furthermore, Henry's opinion that detention officials breached the standard of care in their handling of Kramer's medical condition likewise would not have changed the outcome, since the district court expressly ruled in its opinion that the evidence presented by Kramer might support a claim of negligence or medical malpractice, but did not rise to the level of deliberate indifference. See *Kramer*, 306 FSupp.2d at 1227 (IV). See also *Farrow v. West*, 320 F3d 1235, 1243 (III) (A) (11th Cir. 2003) (noting that "[t]he inadvertent or negligent failure to provide adequate medical care" does not rise to the level of deliberate

---

[3] Kramer separately argues that his attorneys erred by submitting the affidavit of another expert, Dr. Steven Freedman, which described Kramer's medical condition, without going further and having Dr. Freedman express an opinion as to the adequacy of Kramer's treatment while confined in the GCDC. But, Kramer has failed to provide any citations to the record or point to any competent evidence reflecting that Dr. Freedman would have been willing to provide an expert opinion on the adequacy of Kramer's treatment.

[4] Yokely and Muhammad do not challenge Henry's qualifications to render this expert opinion.

indifference so as to support a constitutional claim). It follows that Kramer cannot establish proximate cause based upon this alleged error.

3. In his final enumeration of error, Kramer makes the blanket assertion that "[w]hether [his attorneys] dismissed defendants in the federal cause of action or decided not to pursue causes of action with or without [his] consent is . . . an issue for the jury." Kramer does not elaborate further on what specific defendants or claims should have been pursued in the federal case, or otherwise address how the alleged error proximately caused him any damage. "Pursuant to Court of Appeals Rule 25 (a) (3), an appellant must support enumerations of error with argument and citations of authority, and mere conclusory statements are not the type of meaningful argument contemplated by Rule 25 (a) (3)." (Citation and punctuation omitted.) *Jones v. State*, 289 Ga. App. 219, 221 (1), n. 1 (656 SE2d 556) (2008). See *All Fleet Refinishing v. West Ga. Nat. Bank*, 280 Ga. App. 676, n. 2 (634 SE2d 802) (2006); *City of College Park v. Sheraton Savannah Corp.*, 235 Ga. App. 561, 564 (6) (509 SE2d 371) (1998). Accordingly, Kramer's assertion of error is deemed abandoned. Id. See Court of Appeals Rule 25 (c) (2).

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED MAY 2, 2008 ▮▮▮▮▮▮▮

*Goldberg & Cuvillier, Ralph S. Goldberg*, for appellant.
*Kenneth W. Muhammad*, pro se.
*Daryl V. Yokely*, pro se.