## STEIN *v.* NATIONAL LIFE ASSOCIATION.

Equity will not enjoin one who has been agent of an insurance association, after the termination of the agency, from using any legitimate means to influence policy-holders of the association to forfeit their policies or transfer their insurance to another association or company, when there is no contractual restraint from doing these things, and when by so doing he violates no business secret or trust which had been reposed in him because of his relation as agent.

Argued December 20, 1898.— Decided March 4, 1899.

Injunction. Before Judge Lumpkin. Fulton superior court. September 13, 1898.

*Arnold & Arnold,* for plaintiff in error.
*Abbott, Cox & Abbott,* contra.

Fish, J. Simon Stein entered into an agreement with the National Life Association of Hartford, Conn., whereby he became its general or managing agent in and for the States of Georgia and Alabama, for the purpose of procuring applications for membership in the association, delivering policies issued upon applications so effected, and collecting the first payments thereon. Under the agreement, by which the managing agent's authority was expressly limited, Stein was to solicit and procure the applications of persons to become members of the association, procure the appointment of soliciting agents in his territory who should have no claim against the association for commissions or otherwise by reason of their appointment, forward all applications to the home office of the association for approval or rejection, receive and deliver policies, and receive the first payment of the premium. The agreement provided certain commissions and charges to be allowed Stein, and specified that all moneys received and collected for the association by Stein

and his subagents and employees should be " a fiduciary trust " to be promptly accounted for, reported and paid over to the association in cash, less the commissions and charges specifically authorized. On the first of each month Stein was to make a full report of the business done, and remit to the association the amount due it. He was to abide by the rules, regulations, and instructions of the association with reference to the conduct of its business, and to account for, return and deliver to the association all moneys, policies, receipts, or other property or effects of the association coming into his hands by reason of his appointment as general agent. It was agreed that if Stein should, after one year from the date of the contract, neglect or refuse to promptly and thoroughly work his territory, then the association might "at their option, by giving thirty days notice to [Stein], employ other agents in any other portion of said territory so neglected, without otherwise affecting this contract," and Stein should have no claim on the business effected by the agents so employed; "otherwise," the association was not to appoint other agents in Stein's territory. There was a provision for the termination of the contract by either party in case of the inability of Stein to fulfill its conditions, and for a certain disposition of the "renewals." It was further provided that all of Stein's interests, except renewals, might be terminated by mutual consent, evidenced by thirty days written notice of each party to the other, or by the association for misconduct, neglect of duty, failure to fulfill any of his agreements, or violation of any of the conditions of the contract by Stein. Further, Stein was given the privilege "of writing colored risks in all parts of the South where the same does not come in open conflict with other agents," and his commissions on such business were to be the same as though written in his own territory. The agreement was executed July 12, 1895, and was to "terminate by limitation fifteen years from July 5th, 1890," when Stein's interest should entirely cease except as to renewals.

In August, 1898, the National Life Association filed a petition in the superior court, against Stein, to which was attached a copy of the contract above mentioned. This petition alleged that Stein had, under the contract, been appointed general or

managing agent for the association for Georgia and Alabama, with headquarters in Atlanta; that his duties were of a nature vital to the association; that, so far from complying with the contract, he had totally neglected his duties as agent and violated his contract, to the incalculable and irremediable damage of the association, and, unless restrained from further representing the association, would continue to injure and damage it; that books of original entry were necessary to the business, but that Stein pretended that he kept no such books and refused to show petitioner such memoranda as he had kept; that an agent of the association, regularly accredited and with plenary authority, attempted persistently to obtain from Stein information as to the business, but Stein as persistently refused to give it; that Stein likewise declined to give such information to the association's attorneys; that Stein attempted to damage the business of the association and prevent policy-holders from paying their premiums, intending to force the association to buy him out; that he declined to make report for the last month or two, and made conflicting statements as to the amount due; that Stein was due a large sum; that he was a man of small means with his property encumbered, and that there would be no means at law of estimating the damages which would accrue if Stein were allowed to continue to interfere with and damage the business of the association. It prayed for injunction, receiver, accounting, and general relief, but waived discovery.

Stein in his answer alleged that he had never abandoned the contract until long after the petitioner had done so and had committed breaches of it which made it impossible for him to continue as its agent under the contract. He claimed that the association had violated its contracts with its policy-holders and admitted in letters to such policy-holders that it had done so. He attached to his answer a copy of the statement of the insurance commissioner of Connecticut, the State of the association's incorporation, showing that the officers of the association had attempted to mislead and deceive the insurance department and the general public by the suppression of death claims, reporting as payments to beneficiaries payments to other people, entering lapsed insurance, and in other ways; that it was their

policy to use improper means to induce beneficiaries to accept less than was due them; that the administration expenses amounted to 72 per cent. of the actual payments to death claim beneficiaries.   Stein alleged that the association, by letters to the policy-holders, undertook to avoid certain portions of their policies, and that, by reason of this breach, it became impossible longer to successfully proceed with the business.   He denied that there were any books of original entry at his or any other general agency.   All the entries were made at the home office from data furnished by the agents, and the agents had never been required to keep books.   It was impossible, if not criminal, for defendant to have solicited any new business for the association, after the association had in many ways violated its contract.   He had repeatedly pledged his personal credit for the solvency of the association and deemed it his duty to write to the policy-holders of its insolvent condition.   He reported every month on the proper date until the first of August, 1898.   The association sent letters to policy-holders stating that defendant was no longer in its employ, and defendant, construing this as an additional breach of the contract, wrote the association that he could no longer abide by the contract, and demanded a final statement of account.   He had received no answer.   The amount paid the attorneys for the association was the balance due by him to the association.   Defendant had no objections to being enjoined from acting as agent of the association, or to the appointment of a receiver.   He denied indebtedness except on certain notes not due.   He resisted the prayer that he be restrained from " in any manner influencing its policy-holders against said petitioner."

The case was tried upon the petition and answer and an affidavit signed by certain policy-holders.   Exception is taken to the admission in evidence of the affidavit, but, under the view we take of the case, it is not necessary to decide whether or not it should have been admitted.   It tended to show only that Stein had attempted to dissuade affiants from continuing their policies.   The judge granted an order, to be of force until the final decree in the case, restraining Stein from acting as agent of the association or collecting any moneys or assets belonging

to it; directing the receiver to turn over the property in his hands to the association; discharging the receiver and fixing his compensation; and further ordering "that said Simon Stein, his agents, clerks, employees, confederates and associates, be and they are hereby enjoined from in anywise approaching or communicating with policy-holders in said company for the purpose of influencing or procuring them to lapse their policies or discontinue the same, and from influencing or attempting to influence policy-holders to transfer their insurance in said National Life Association to any life-insurance company, and from doing or attempting to do any such acts by himself or through others." To this latter portion of the order Stein excepted.

Careful reading of the contract entered into by Stein and the association reveals no stipulation that Stein should, after severance of his connection with the association, represent no other insurance company or refrain from influencing policy-holders to allow their policies to lapse; nor was there language from which such provision should be implied. Hence the cases cited, which hold that certain contracts in partial restraint of trade are enforceable, are not here in point. Contracts in restraint of trade are enforced only when the restraint is reasonably limited as to time or place. The order granted in the present case is in restraint of trade, presumably in the enforcement of a contract, when not only is there no limitation in the contract of such restraint, but when there is no stipulation in the contract which can be construed as referring to the question of restraint at all. Courts of equity will sometimes enjoin the commission of a tort, but we can not see that this doctrine can be applied here; for Stein is enjoined from doing things which, however injurious to the association, are certainly not tortious. It may be that he had been guilty of an actionable tort in making false statements as to the association and to its injury, but he is enjoined, by the judge's order, not from repeating any such statements, but from using any means whatever to injure the business of the association or to win over its policy-holders to any other insurance company. The injunction must have been granted, as to this matter, by applying to the case the

equitable principles stated in High on Injunctions, § 19, as follows: " The disclosure of secrets which have come to one's knowledge during the course of a confidential employment will be restrained by injunction. And where a confidential relationship has existed, out of which one of the parties has derived information or secrets concerning the other, equity fastens an obligation upon his conscience not to divulge such knowledge, and enforces the obligation when necessary by injunction. Thus, persons who, in the capacity of attorneys, agents, or in other confidential relations, have obtained the custody of the books and documents of their principals, or have come into possession of secrets relating to their affairs, will be restrained from making them public. So defendants have been enjoined from disclosing the secrets pertaining to plaintiff's business and processes of manufacturing goods, defendants having acquired such knowledge while in plaintiff's employ, under an agreement that, in consideration of the employment, they would not divulge such secrets." Equity interferes in such cases in order to prevent an abuse of confidence; and where there has been no confidential relation, and, consequently, no trust reposed, the rule does not apply. The order granted in the present case restrains the plaintiff in error from attempting to influence policy-holders in the association to discontinue their policies or to transfer them to any other life-insurance company either by the communication of what he knows of the association or otherwise. Even, however, were it limited to communications of what he knows of the association, it would be erroneous. The relation of Stein to the association was not a confidential one in the sense that he, by reason of it, acquired a knowledge of any business secrets. The business had been largely built up by him and his employees, and that knowledge of the policy-holders which would be useful to him, in the event of his representing as agent another company, was not confided to him by the association, if derived from it at all. Persons may have taken out policies in the association on account of personal friendship for Stein or confidence in his integrity, and there is no reason why he should not be allowed to solicit their business for another company which he represents,

his agency for the association having been terminated.　If this injunction was proper, then any insurance general agent whose contract as such had been terminated could be restrained from further pursuing, in the interest of another company, the business of his calling among those with whom he might be able to do the best work, those whom he had secured as policy-holders in the company he first represented.　Under this injunction, Stein could not solicit, upon any ground or for any reason, the transfer of business from the plaintiff association to another company, though he had not so agreed in his contract with the association and though that contract was at an end.　And that, too, in a case where he relied upon no information which had been communicated to him, in confidence, as a business or trade secret.　For the reasons given above, and under the facts as they appear in the record, we think that the judge below abused his discretion in granting that part of the order of which plaintiff in error complains; and the judgment of the court is accordingly

*Reversed. All the Justices concurring.*