260 Ga. 346 (1990)
392 S.E.2d 860
AMERICAN BUILDINGS COMPANY et al.
v.
PASCOE BUILDING SYSTEMS, INC.
S90A0103.
Supreme Court of Georgia.
Decided July 5, 1990.
Reconsideration Denied July 26, 1990.
McLain & Merritt, Robert B. Hill, for appellants.
Mark R. Youmans, William G. Scrantom, Jr., for appellee.
FLETCHER, Justice.
Pascoe Building Systems, Inc. sued American Buildings Company, Jack Pope and Jimmy Mehaffey. Pope and Mehaffey. Pope and Mehaffey are former Pascoe employees who have become American employees. Pascoe seeks injunctive relief and damages based upon allegations that defendants, acting individually and in concert, have engaged in tortious interference with Pascoe's at-will employee relations, and that they have, or will, misappropriate Pascoe's trade secrets. This appeal is from the trial court's grant of interlocutory injunctive relief with respect to both of the foregoing claims. We reverse that part of the judgment relating to tortious interference with employee relations, and we affirm that part of the judgment relating to misappropriation of trade secrets.

Facts
Pascoe is engaged in the manufacture and sale of pre-engineered metal buildings. Its corporate office and principal place of business are located in Columbus, Georgia. American, a competitor of Pascoe, has its principal place of business in Eufaula, Alabama. Until shortly before this action, Pascoe employed Pope as corporate vice-president working in its research department and Mehaffey as manager of its drafting department.
Pascoe has undergone various corporate reorganizations since 1979 and has experienced employee dissatisfaction. Pope became dissatisfied and made a decision to leave the company in the fall of 1988. He approached American the following December. American informed him it needed additional engineering personnel, and that the opening of a satellite engineering office in the Columbus/Phenix City area was possible. The area was desirable because of its proximity to Eufaula and because there are engineering and drafting personnel in this geographical area, including present and former Pascoe employees.
Pope accepted employment with American and began work in February of 1989. Prior to his leaving Pascoe, Pope, in response to inquiries from Pascoe employees, informed them that he was going to work for American and that there was a possibility that American would be opening an office in Phenix City. He testified that some Pascoe *347 employees approached him and told him that they were dissatisfied with their jobs at Pascoe and were looking for new jobs, but did not want to leave the Columbus area.
American authorized Pope to open the engineering office and to hire an engineering squad. It instructed Pope not to offer any Pascoe employees larger salaries than they were making at Pascoe because Pascoe salaries in Columbus were "slightly more" than American salaries in Eufaula, and because American could not afford to pay Pascoe employees any more than they were making at Pascoe. In March of 1989, American placed an advertisement in a Columbus newspaper stating that positions for design engineers and drafting technicians were available at American's Phenix City office, and that personnel with qualifying educational credentials and/or work experience were needed.
Seventeen Pascoe employees, including Mehaffey, submitted resumes to American. Shortly after accepting employment with American, but prior to leaving Pascoe, Mehaffey held individual conferences with drafting personnel under his supervision for the purpose of announcing annual pay raises. He made statements to the effect that Pascoe "wouldn't be around in the fall," "he didn't see how the company . . . could last six months to a year," and "he didn't think that Pascoe was going to make it."
After interviewing prospective employees, Pope offered jobs to nine Pascoe employees, and seven accepted. These included Mehaffey, four draftsmen, one computer-aided-design operator, and one design engineer. These parties stated in affidavits that they left Pascoe's employ because they were insecure in their job positions and felt dissatisfied there. They further stated that Pope did not make any disparaging or false statements concerning Pascoe.
A Pascoe employee, whom Pope interviewed, but did not offer a job, gave testimony to the effect that Pope told him that he was hiring Mehaffey instead of the applicant because Mehaffey "could pull more people his way than I could my way." This witness further testified that, in the context of the conversation, he interpreted that as meaning that Mehaffey was a better leader than he and not that Mehaffey could more effectively hurt or damage Pascoe.
Pascoe complains that defendants, acting separately and in concert, wrongfully solicited and induced Pope, Mehaffey, and a number of other key employees to leave its employment. Pascoe alleges that the loss of these key employees essential to its business operations has caused it irreparable damage and that defendants' activities constitute tortious interference with employee relations and an unlawful restraint of trade and fair competition.
Pascoe also contends that certain proprietary information is within the knowledge of its former employees, who will make this information *348 available to American. Although certain aspects of this information are within the public domain, Pascoe claims that the totality of the information  concerning the physical features of the products, the configuration of their component parts, and the manufacturing process developed by Pascoe  is unique in its combination, is not available to the general public, and has been treated by Pascoe as a valuable corporate asset and as confidential.
On the day Pascoe filed this complaint the trial court entered an ex parte temporary restraining order enjoining the defendants from (1) soliciting or inducing any current employee of Pascoe to become an employees of American; (2) granting such employment to a current employee of Pascoe; and (3) consummating an employment agreement with any persons who were employees of Pascoe within seven days prior to the date the order was entered.
The trial court subsequently granted Pascoe's request for an interlocutory injunction enjoining defendants from "soliciting, inducing, or recruiting any employees of [Pascoe] for employment with [American] pursuant to any plan or design of hiring that is targeted or directed at [Pascoe] and its employees as a source of employment." Defendants were further enjoined from "utilizing the knowledge" of the Pascoe employees with regard to various precisely specified features within Pascoe's hangar door and mini-warehouse systems.
1. Generally in an interlocutory injunction, the trial court cannot finally adjudicate issues of fact, but can pass on such questions only so far as is necessary to determine whether the evidence authorizes the grant or refusal of interlocutory relief. Kniepkamp v. Richards, 192 Ga. 509, 516 (2) (16 SE2d 24) (1941). Discretion in the grant or denial of an interlocutory injunction is limited to cases when there is a conflict in the evidence. When there is no material conflict in the evidence, the applicable rules of law cannot be avoided on the basis of discretion. Davis v. Miller, 212 Ga. 836, 840 (96 SE2d 498) (1957).
2. We hold that the evidence in the record does not authorize the interlocutory order enjoining the defendants from soliciting, inducing, or recruiting Pascoe employees for employment with American as the evidence fails to support Pascoe's claim that an actionable tort in this regard has been committed.
When a party such as American decides to establish a business office in close proximity to a competitor, the privilege of fair competition protects such action. When the competitor solicits employment applications that the plaintiff's at-will employees respond to, this too is a matter of fair competition. This Court has, however, "recognize[d] there are limits to the kinds of inducement [of at-will employees] which may be permitted . . . [and have] adopt[ed] the theory of privilege as set out in the Restatement, Torts, § 768, including the limitations upon which the privilege rests." Orkin Exterminating Co. *349 v. Martin Co., 240 Ga. 662, 667 (1) (242 SE2d 135) (1978); see E. D. Lacey Mills v. Keith, 183 Ga. App. 357, 363 (10) (359 SE2d 148) (1987). The competitor's privilege is lost when an illegal restraint of trade or competition under federal or state statutes is created or continued or when wrongful means in the solicitation of employees are utilized. See Orkin, 240 Ga. at 666; E. D. Lacey Mills, 183 Ga. App. at 363; Nager v. Lad `n Dad Slacks, 148 Ga. App. 401, 402 (251 SE2d 330) (1978). Such wrongful means generally involve predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions. No such action is attributable to American, and Pascoe has presented no evidence of an illegal restraint of trade or competition.
Likewise, the Pascoe employees, including Pope and Mehaffey, who have terminated their at-will employment relations with Pascoe to become employed by American, were exercising their individual rights. When corporate officers have embarked upon an enterprise in competition with the corporation to which fiduciary duties were owed, their conduct has been held to be actionable when they have engaged in breaches of their fiduciary duties before termination of their at-will employment. See E. D. Lacey Mills, 183 Ga. App. at 363. Such breaches of fiduciary duty have generally originated with the defendants' forming the competitive enterprise while still employed by the plaintiff and attracting away all or a large percentage of the personnel upon whom the plaintiff depended to function; the wrongful means generally have consisted of unauthorized use of confidential information, defamation, and misrepresentations as to the plaintiff's financial solvency.
Although there is evidence in this case that defendants did attract away key personnel within Pascoe's engineering and drafting departments, the evidence further shows that these employees left Pascoe's employ because of pre-existing dissatisfaction with their job positions there. In regard to the solicitation of Pascoe's at-will employees, no improper actions are attributable to Pope, other than his somewhat cryptic statement to the effect that Mehaffey could "pull more people his way than my way." The only impropriety attributable to Mehaffey consists of the statements he made to Pascoe employees concerning Pascoe's alleged financial condition. Therefore, the record does not support a determination that defendants were committing a tort which justified the trial court to issue an interlocutory injunction.
3. Under Georgia law, a "trade secret" is a "plan, process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided in order to apply it to the uses intended." Textile Rubber &c. Co. v. Shook, 243 Ga. 587, 589 (1) *350 (255 SE2d 705) (1979). Even in the absence of an express agreement, it is an implied term of an employment contract that an employee will not divulge a trade secret learned by virtue of his employment to a competitor of his former employer. Thomas v. Best Mfg. Corp., 234 Ga. 787, 789 (3) (218 SE2d 68) (1975). When one has acquired knowledge of a trade secret by reason of a confidential business relationship with the holder of the trade secret, an injunction restraining divulgence of the trade secret will lie. Id. at 790. Although such right exists irrespective of any copyright or patent, it does not exist with respect to matters that are generally known in the trade. Outside Carpets, Inc. v. Industrial Rug Co., 228 Ga. 263, 268 (185 SE2d 65) (1971) "Trade secrets are entitled to protection so long as competitors fail to duplicate them by legitimate, independent research." Thomas, 234 Ga. at 789. Also, an employee's skill, aptitude, and other subjective knowledge obtained in the course of employment, are not the property of the employer, and the employee has a right to apply such skills to the profession or trade, except insofar as is limited by a valid restrictive covenant. Outside Carpets, 228 Ga. at 268.
The evidence in the record is conflicting with respect to the question are "the formula, process, and machinery, including its configuration, utilized by the plaintiff constituted trade secrets," Thomas, 234 Ga. at 790, or is "the process upon which the plaintiff bases its claim . . . nothing more than a process and device generally in use in the . . . industry." Outside Carpets, 228 Ga. at 268. Since the evidence is conflicting, the trial court did not abuse its discretion in granting an interlocutory injunction as to Pascoe's trade-secrets claim.
Judgment affirmed in part and reversed in part. All the Justices concur.