S93A1393, S93X1576. AVNET, INC. et al. v. WYLE LABORATORIES, INC. et al.; and vice versa.

(437 SE2d 302)

CARLEY, Justice.

Appellant-plaintiffs Avnet, Inc. (Avnet) and Hall-Mark Electronics Corporation (Hall-Mark) are major distributors of electronic components, as is appellee-defendant Wyle Laboratories, Inc. (Wyle). After the announcement of a merger between Avnet and Hall-Mark, appellee-defendant James Haraway left his position as a Hall-Mark

vice president and was hired by Wyle. In addition, a number of Hall-Mark's other employees left and began to work for Wyle. Avnet and Hall-Mark brought suit, seeking damages and injunctive relief.

The trial court denied a motion for an interlocutory injunction insofar as it was based upon claims that Wyle was wrongfully soliciting Avnet's and Hall-Mark's employees. See *American Buildings Co. v. Pascoe Building Sys.*, 260 Ga. 346, 348 (2) (392 SE2d 860) (1990). Finding the Georgia Trade Secrets Act, OCGA § 10-1-760 et seq., to be applicable, the trial court did, however, grant an interlocutory injunction requiring Wyle and Haraway, "to the extent they have same, to return to [Avnet and Hall-Mark] any handwritten, typed, printed or written information that goes to the identity of [Avnet's and Hall-Mark's] suppliers, customers' identities, customer needs, business practices and patterns which include the type products clients purchase, the products sold but not delivered, specific client relations problems, client preferences, cost pricing, sales volume information, the amount clients are willing to pay, cost profit and price computation information as well as employee compensation capabilities and performances." In this connection, the trial court nevertheless further ordered that, "[t]o the extent that former employees of [Avnet and Hall-Mark] (who are now employed by Wyle) have such information 'in their minds,' those employees are free to use such information in their employment with Wyle."

In Case No. S93A1393, Avnet and Hall-Mark appeal from the trial court's order which partially granted and partially denied their motion for an interlocutory injunction. In Case No. S93X1576, Wyle and Haraway cross-appeal from that order. We will address the cross-appeal first.

## Case No. S93X1576

1. The Georgia Trade Secrets Act authorizes injunctive relief for an actual or threatened misappropriation of a "trade secret," which "means information including, but not limited to, technical or non-technical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, *or a list of actual or potential customers or suppliers* which: (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Emphasis supplied.) OCGA § 10-1-761 (4).

The materials found by the trial court to be "trade secrets" included lists which contained the identities of, and specific information

concerning, Avnet's and Hall-Mark's *actual* customers. Wyle and Haraway urge that there was no showing that the information contained in Avnet's and Hall-Mark's customer lists was not readily ascertainable by other proper means. This contention is without merit. Obviously, there are innumerable other proper sources from which Wyle might derive a general list of *potential* customers for its electronic components. However, the only logical source from which Wyle might secure lists containing specific information regarding the *actual* customers for Avnet's and Hall-Mark's electronic components is business records generated by Avnet and Hall-Mark. Such a source would be improper if Avnet and Hall-Mark had made a reasonable effort to maintain the secrecy of those customer lists.

Citing *Smith v. Mid-State Nurses*, 261 Ga. 208 (403 SE2d 789) (1991), Wyle and Haraway urge that there is no evidence of such a reasonable effort to maintain the secrecy of Avnet's and Hall-Mark's customer lists. Reliance upon *Smith* is misplaced. In *Smith*, the former employer urged that its customer lists were a "trade secret" but, at the hearing on the interlocutory injunction, the only evidence as to efforts to maintain secrecy did not relate to the customer lists, but to *other* written forms which the former employer had developed. In contrast, there was, in the instant case, evidence from which the trial court could have found that Avnet and Hall-Mark had made a reasonable effort to maintain the secrecy of the customer lists which the trial court determined to be a "trade secret." There was evidence that the customer lists were not freely or widely disseminated and that certain employees to whom the information contained in the lists had been disclosed were required to sign agreements to keep the information secret. It is immaterial that some, but not all, employees were required to sign such agreements. "Even in the absence of an express agreement, it is an implied term of an employment contract that an employee will not divulge a trade secret learned by virtue of his employment to a competitor of his former employer. [Cit.]" *American Buildings Co. v. Pascoe Building Sys.*, supra at 350 (3).

Generally, the trial court has broad discretion to decide whether to grant or deny an interlocutory injunction. See *Zant v. Dick*, 249 Ga. 799 (294 SE2d 508) (1982). In the instant case, there was some evidence which would authorize the trial court to find that the lists containing specific information regarding Avnet's and Hall-Mark's actual customers were "trade secrets" as defined in OCGA § 10-1-761 (4). Accordingly, "the trial court did not abuse its discretion in granting an interlocutory injunction as to [Avnet's and Hall-Mark's] trade-secrets claim." *American Buildings Co. v. Pascoe Building Sys.*, supra at 350 (3).

## Case No. S93A1393

2. As to their trade secrets claim, Avnet and Hall-Mark urge that the trial court erred in limiting its grant of injunctive relief to "handwritten, typed, printed or written information" regarding their customers and in holding that their former employees were otherwise free to use such customer information as they might have "in their minds."

Prior to the enactment of the Trade Secrets Act, there was a clearly recognized distinction between an employer's lists containing customer information and a former employee's knowledge of customer information. See *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, 224 Ga. 160, 165 (2) (160 SE2d 356) (1968); *Vendo Co. v. Long*, 213 Ga. 774, 778 (2) (102 SE2d 173) (1958); *Stein v. Nat. Life Assn.*, 105 Ga. 821 (32 SE 615) (1899). This distinction was based upon the fact that the employer's customer lists were considered to be the *employer's property*, but the former employee's personal knowledge of customer information was not.

> "[I]t must appear that there exists confidential information which is *the property of the* [*employer*] and peculiar to [his] business, the disclosure or use of which by the [former employee] would be injurious to the [employer]. 'A person who leaves the employment of another has a right to take with him all the skill he has acquired, all the *knowledge* he has obtained, and all the *information* that he has received, so long as nothing is taken that is *the property of the employer*. Trade secrets are *the property of the employer* and cannot be taken or used by the employee for his own benefit, but *customers are not trade secrets*. Knowledge on the part of the employee concerning the names and addresses of customers is *not* the property of the employer.' [Cit.]"

(Emphasis supplied.) *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, supra at 165 (2).

Thus, prior to the enactment of the Trade Secrets Act, an employer was entitled to no injunctive relief if he did

> "not allege that the [former employee] has a *list* of the [employer's] customers which [the former employee] procured while an employee and which he is using to the [former employer's] detriment, and those cases holding such *lists* to be confidential information are *not* applicable. . . . [I]n the absence of contractual restraint, equity will not enjoin the mere solicitation of business by a former employee. [Cit.]" [Cit.]

(Emphasis supplied.) *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, supra at 165 (2). This is consistent with § 396 (b) of the Restatement (Second) of Agency:

> *Unless otherwise agreed*, after termination of the agency, the agent . . . has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, *written lists of names*, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal and the names of the customers *retained in his memory*, if not acquired in violation of his duty as agent. . .

(Emphasis supplied.) Thus, unless the Trade Secrets Act can be said to have obviated this previously recognized common law distinction between an employer's customer lists and a former employee's personal knowledge of customer information, an employer who wishes to protect his intangible customer information as well as his tangible customer lists must secure a non-competition restrictive covenant from his employees.

OCGA § 10-1-761 (4) defines a "trade secret" so as to include certain forms of "information" without regard to the form that such "information" might take, but *"customer* information" is not specifically included among them. In addition to the indicated forms of "information," OCGA § 10-1-761 (4) further provides that a *"list* of actual or potential customers" *is* a trade secret. If the intent of the Trade Secrets Act were to obviate any distinction between an employer's customer lists as an element of the employer's property and an employee's personal knowledge of customer information as otherwise, "trade secrets" would be more broadly defined in OCGA § 10-1-761 (4) so as to include all forms of customer "information" rather than specifically defined to include only customer "lists." See *Allen v. Johar, Inc.*, 823 SW2d 824 (Ark. 1992) (construing the Arkansas Trade Secrets Act, which defines a "trade secret" more broadly than does Georgia's Trade Secrets Act).

It follows that the Trade Secrets Act has *retained* the common law distinction and that the holdings in *Taylor Freezer Sales Co.*, supra; *Vendo Co.*, supra; and *Stein*, supra, have not been obviated. Compare *Allen v. Johar, Inc.*, supra.

> "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in

connection and in harmony with the existing law, . . . and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts."

*Thornton v. Anderson*, 207 Ga. 714, 718 (64 SE2d 186) (1951). "[S]tatutes are not understood to effect a change in the common law beyond that which is clearly indicated by express terms or by necessary implication." *Sears v. Minchew*, 212 Ga. 417, 420 (2) (93 SE2d 746) (1956).

Accordingly, the trial court correctly limited its grant of injunctive relief to "handwritten, typed, printed or written information" regarding Avnet's and Hall-Mark's customers. Only such tangible items would constitute elements of Avnet's and Hall-Mark's property so as to be "lists" of customers within the definition of "trade secrets" under OCGA § 10-1-761 (4). To achieve broader protection so as to preclude former employees from using their personal knowledge of customer "information," Avnet and Hall-Mark

should have required its prospective employees to sign restrictive covenants as part of their employment contracts. The prospective employees could then have bargained about the terms of the restrictive covenants or perhaps have extracted some additional contractual benefits in exchange for [Avnet's and Hall-Mark's] insistence on the covenants. At a minimum, [Avnet's and Hall-Mark's] employees . . . would then have had advance notice of the limitations upon their future employment as a result of the covenants to which they agreed. [Avnet's and Hall-Mark's] actions in the present case amount to an effort to derive the benefits of a restrictive covenant which [they] never obtained from [their former employees].

*Colson Co. v. Wittel*, 569 NE2d 1082, 1088 (Ill. App. 1991) (construing the Illinois Trade Secrets Act, which defines a "trade secret" identically to Georgia's Trade Secrets Act). The contracts signed by Avnet's and Hall-Mark's former employees do " 'not prohibit [their] soliciting of [Avnet's and Hall-Mark's] customers, and in the absence of contractual restraint, equity will not enjoin the mere solicitation of business by a former employee. [Cit.]' [Cit.]" *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, supra at 165 (2).

3. Avnet and Hall-Mark enumerate as error the denial of their motion for an interlocutory injunction insofar as it was based upon claims that their employees were being wrongfully solicited.

"[P]roof that [Wyle or Haraway] induced the employees to leave [Avnet and Hall-Mark] is an essential element of the claim. [Cit.]" *Richard A. Naso &c. v. Diffusion*, 194 Ga. App. 201, 204 (390 SE2d 106) (1990). The trial court found that Wyle and Haraway had not done so and the evidence authorized that finding.

> Examination of the testimony evidences no "procuring" of [any] breach of contract by [Wyle or Haraway] other than simply stating that there is a job available that pays such and such an amount. [Cit.] There is no evidence of a solicitation with a purpose to harm or damage [Avnet and Hall-Mark] ([cit.]) nor is there evidence [Wyle or Haraway] actively induced, conspired with, or aided and abetted [any of Avnet's and Hall-Mark's employees] to break [their] contract[s] constituting tortious interference with [Avnet's and Hall-Mark's employees'] employment contract[s]. [Cit.]

*Purcell v. Joyner*, 231 Ga. 85, 88 (3) (200 SE2d 363) (1973). "Therefore, the record does . . . support a determination that [Wyle and Haraway] were [not] committing a tort which justified the trial court to issue an interlocutory injunction." *American Buildings Co. v. Pascoe Building Sys.*, supra at 349 (2).

Avnet and Hall-Mark urge that the trial court erred in relying exclusively upon the law of Georgia in determining whether to grant the interlocutory injunction. However, they never pled and proved the law of any other state. "[W]here no statute of the foreign State is pleaded, it will be presumed that the common law prevails in such State." *Slaton v. Hall*, 168 Ga. 710, 714 (1) (148 SE 741) (1929). "The trial court did not err in denying injunctive relief. [Cits.]" *Textile Rubber &c. Co. v. Shook*, 243 Ga. 587, 593 (2) (255 SE2d 705) (1979).

*Judgments affirmed. All the Justices concur, except Hunt, P. J., who concurs in the judgment only.*

DECIDED DECEMBER 2, 1993.

*Rogers & Hardin, Richard H. Sinkfield, Jessica J-M Hagen, Phillip S. McKinney, Anne E. Williams, Keck, Mahin & Cate, Roger L. Longtin, Stephen L. Agin, Tracy E. Donner,* for appellants.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Dirk G. Christensen, Jeffrey D. Horst,* for appellees.