**SHOREWOOD PACKAGING CORPORATION,**
Plaintiff,

v.

**COMMERCIAL UNION INSURANCE COMPANY and The Hartford Fire Insurance Company, Defendants.**

Civ. A. No. 1:93–cv–1317–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 30, 1994.

R. Wayne Thorpe, Jeffrey M. Brown, Atlanta, GA, for plaintiff.

Frank C. Bedinger, III, Wayne David Taylor, Atlanta, GA, Ignatius John Melito, New York City, for defendants.

## *ORDER*

HULL, District Judge.

This action is before the Court on (1) Defendants' Joint Motion for Partial Summary Judgment [26–1] and (2) Plaintiff's Motion for Partial Summary Judgment [30–1].

## I. *FACTUAL BACKGROUND*

This action involves a dispute over insurance coverage. Shorewood operates off-set lithograph gravure printing operations at facilities located in Farmingdale, New York

and LaGrange, Georgia. Shorewood installed underground storage tanks ("USTs") to hold spent solvents and other materials at each of the sites. A leak or leaks developed in the USTs at both the Farmingdale, New York and LaGrange, Georgia facilities.

On or about March 1, 1978, and continuing at least through January 25, 1984, Commercial Union Insurance Company ("Commercial Union") issued certain insurance policies to Shorewood specifically covering both the Farmingdale, New York and the LaGrange, Georgia facilities. On or about January 25, 1984, and continuing at least through January 25, 1989, Hartford Accident and Indemnity Company ("Hartford") issued certain policies to Shorewood specifically covering both the Farmingdale, New York and the LaGrange, Georgia facilities.

Shorewood has demanded coverage for the property damage at both sites under the above-referenced policies. Both Commercial Union and Hartford have refused to provide coverage to date.

Commercial Union has been authorized to do business in the state of Georgia since April of 1960. Commercial Union has often availed itself of the courts of this state as a plaintiff in litigation. Hartford has been authorized to do business in the state of Georgia since August of 1913. Hartford has often availed itself of the courts of this state as a plaintiff in litigation.

The parties have stipulated (1) that the insurance policies at issue were delivered to Shorewood in New York, and (2) that no New York statute exists which would govern the interpretation of the insurance policies in issue. *See* Joint Stipulation of Material Facts, Exhibit A to Plaintiff's Motion for Partial Summary Judgment.

## II. *DISCUSSION*

### A. *Forum State Governs Choice of Law*

Both Plaintiff and Defendants have moved for partial summary judgment on the choice of law issue. In a diversity action, a federal district court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941); *Wam-mock v. Celotex Corp.*, 835 F.2d 818, 829 (11th Cir.1988); *Harris v. City of Chattanooga*, 507 F.Supp. 374, 376 (N.D.Ga.1981). Since Georgia is the forum state, Georgia's choice of law rules govern this diversity action. *American Family Life Assur. Co. v. United States Fire Co.*, 885 F.2d 826, 830, *reh'g denied*, 892 F.2d 89 (11th Cir.1989).

Plaintiff Shorewood contends that Georgia law applies; whereas, Defendants assert that Georgia's choice of law rules require the application of New York law here.

### B. *Georgia's Lex Loci Contractus*

Georgia's choice of law rules follow the doctrine of *lex loci contractus:* the law of the place where the contract is made. Under Georgia's choice of law rules, the place where the contract is made is the place where the "last act essential to the completion of the contract was done." *Salsbury Laboratories v. Merieux Laboratories*, 735 F.Supp. 1545, 1549 (M.D.Ga.1988); *General Telephone Co. of the Southeast v. Trimm*, 252 Ga. 95, 95, 311 S.E.2d 460 (1984). For insurance contracts, the act of delivery is the last act essential for completion of the insurance contract, and thus the place of delivery is where the insurance contract is made. *Johnson v. Occidental Fire & Cas. of North Carolina*, 954 F.2d 1581, 1584 (11th Cir.1992). In this case, it is undisputed that the insurance contracts were delivered in New York. Therefore, applying the doctrine of *lex loci contractus*, it would seem that the substantive law of New York would control this action.

However, Plaintiff contends that, under Georgia's interpretation of *lex loci contractus*, Georgia courts limit the application of non-forum law, such as New York, to statutes and caselaw interpreting those statutes. If there are no New York statutes on point, and thus the New York common law would apply, then Georgia courts apply Georgia's common law and not New York's interpretation of common law. Plaintiff's position is essentially that Georgia's application of *lex loci contractus* permits the use of a non-forum's statutes and interpretive caselaw, and in the absence of an applicable non-forum statute, then the action is controlled by Georgia's common law. Georgia's prefer-

ence for its own common law over that of a foreign forum is commonly referred to as the "presumption of identity" rule. Essentially, where there is not a specific statute in another state which applies, then Georgia courts presume that Georgia's development of common law is identical to the foreign forum's common law and therefore apply the law of the forum—Georgia. Since all parties to this case stipulate that there are no New York statutes which apply to this dispute, Plaintiff contends that Georgia's common law applies.

Defendants argue that Georgia's interpretation of *lex loci contractus* is based upon an outdated Georgia procedural practice which has been overruled expressly by statute and implicitly overruled by the Georgia courts. Specifically, Defendants contend that Georgia's practice of applying its own common law and not the common law of a non-forum, arose from the prohibition against Georgia courts taking judicial notice of a non-forum's laws. Since Georgia no longer requires that a party plead and prove a non-forum's law, Defendants argue that Georgia's previous prohibition against using a non-forum's common law has outlived its usefulness. *See* O.C.G.A. § 9–11–43(c).

To support their position, Defendants contend that the Georgia Supreme Court in *General Telephone Company of the Southeast v. Trimm,* 252 Ga. 95, 311 S.E.2d 460 (1984), and *Menendez v. Perishable Distributors, Inc.,* 254 Ga. 300, 329 S.E.2d 149 (1985), implicitly overruled Georgia's rule that where *lex loci contractus* points towards another state, then the Court may apply only that other state's statutes and caselaw interpreting those statutes. Defendants ask this Court to find explicitly what, Defendants argue, the Georgia Supreme Court only implicitly recognized in *General Telephone* and *Menendez;* namely, that Georgia courts construe *lex loci contractus* purely, thus permitting the application of a non-forum's common law.

In *General Telephone,* upon questions certified by the Eleventh Circuit, the Georgia Supreme Court affirmed "our traditional ap-

proach" to *lex loci contractus.* In reaching its conclusion, the Georgia Supreme Court stated that *"Trustees of Jesse Parker Williams Hosp. v. Nisbet,* 189 Ga. 807, 7 S.E.2d 737 (1940) [is] the leading Georgia case explanatory of the law of *lex loci contractus." General Telephone,* 252 Ga. at 96, 311 S.E.2d 460. In *Trustees of Williams Hospital v. Nisbet,* 189 Ga. 807, 7 S.E.2d 737 (1940), the Georgia Supreme Court explained that where a contract is made in another state and that state is one of the original thirteen colonial states, then in the absence of an applicable statute, the common law as interpreted by Georgia will control, as follows:

> A contract of a foreign State which constituted one of the thirteen original colonies, or which was derived from territory included in one of such colonies, will be construed and governed by the common law, in the absence of any pleading to the contrary. And in such a case the construction of the common law given by the courts of this State will control, in preference to the construction given by the court of the State of the contract.

*Trustees of Williams Hosp. v. Nisbet,* 189 Ga. 807, 811, 7 S.E.2d 737 (1940).

The Georgia Supreme Court, in *General Telephone,* explicitly referenced its prior decision in *Trustees of Williams Hospital* as the controlling explanation of Georgia's *lex loci contractus* rule. Had the Georgia Supreme Court wanted to dismiss as outdated Georgia's prohibition against applying another state's common law, it could have stated a revised rule, but the Court did not. Instead, the Georgia Supreme Court expressly affirmed Georgia's traditional approach to *lex loci contractus* and referenced *Trustees of Williams Hospital* as the "leading Georgia case explanatory of the law of *lex loci contractus." General Telephone,* 252 Ga. at 96, 311 S.E.2d 460. This Court should not read a change into the Georgia Supreme Court's interpretation of Georgia law where no change is suggested by that Supreme Court.[1]

---

1. Defendants argue that by not restating the limitation upon Georgia's *lex loci contractus* rule, the Georgia Supreme Court in *General Telephone*

implicitly overruled the prohibition against a applying a state's common law. Without reciting the facts of *General Telephone Co. of the South-*

In addition, in *Menendez v. Perishable Distributors, Inc.*, 254 Ga. 300, 329 S.E.2d 149 (1985), the Georgia Supreme Court was faced again with certified questions from the Eleventh Circuit on Georgia's choice of law rules. In answering the certified question, the Georgia Supreme Court stated that *lex loci contractus* mandated that as between Georgia and Florida, Florida substantive law controlled since the contract was made in Florida. *Menendez*, 254 Ga. 300, 302, 329 S.E.2d 149 (1985). However, of even more importance than the *Menendez* court's result, was that Florida had a statute on point to the issue before the Eleventh Circuit, and by certification the Georgia Supreme Court. *Menendez*, 254 Ga. at 301, 329 S.E.2d 149 ("Florida has, by statute, abolished the common law rule.... F.S.A. § 768.041."). Therefore, as in *General Telephone*, the Georgia Supreme Court's ruling in *Menendez* was consistent with Georgia's traditional interpretation of *lex loci contractus*. Nothing in the *Menendez* opinion suggests that the Georgia Supreme Court discarded Georgia's prohibition against applying a non-forum's common law. Indeed, the actual holding of the case, that Florida has a statute on point

and that under *lex loci contractus* Florida law applies, is consistent with Georgia's limitation of only applying another state's statutes and related caselaw.

Moreover, the Georgia Supreme Court recently has paid credence to the continuing life of Georgia's preference for its own law in *Avnet, Inc. v. Wyle Laboratories, Inc.*, 263 Ga. 615, 437 S.E.2d 302 (1993). Writing for the eight of the Justices,[2] Justice Carley concluded that Georgia law may properly be applied since, "[w]here no statute of the foreign State is pleaded, it will be presumed that the common law prevails in such State." *Avnet*, 263 Ga. at 621, 437 S.E.2d 302. As in *General Telephone* and *Menendez*, nothing in the Georgia Supreme Court's opinion in *Avnet* suggests that Georgia does not continue to limit its courts' application of non-forum law to statutes and related caselaw. Indeed, all three of the Georgia Supreme Court's recent pronouncements on the subject support a finding that Georgia's interpretation of *lex loci contractus* limits the application of non-forum law to statutes and related caselaw.[3]

---

*east v. Trimm*, this Court notes that in *General Telephone*, the last act essential to the completion of the contract occurred in Georgia. Therefore, the Georgia Supreme Court was not presented a certified question on whether Georgia favored its common law over the law of the state where the contract was made. The certified question to the Georgia Supreme Court addressed whether Georgia still followed its traditional *lex loci contractus* rule or if Georgia had adopted the newer "center of gravity test." The Georgia court answered that it continued to adhere to its traditional rule of *lex loci contractus*. While there may be some room to debate whether the *General Telephone* rule affirmed the Georgia prohibition on another forum's common law, that decision certainly did not overrule Georgia's traditional interpretation of *lex loci contractus*.

2. Justice Carley wrote the opinion in which all Justices joined, except for Justice Hunt, who concurred in the judgment only. *Avnet*, 263 Ga. at 621, 437 S.E.2d 302.

3. Defendants also cite to two post-*General Telephone/Menendez* Georgia Court of Appeals decisions to support their contentions. *See Swafford v. Globe American Casualty Co.*, 187 Ga.App. 730, 371 S.E.2d 180 (1988); *Tennessee Farmers Mutual Insurance Co. v. Wheeler*, 178 Ga.App. 73, 341 S.E.2d 898 (1986). In *Swafford*, the "parties

agreed the laws of Tennessee are applicable in the case." *Swafford*, 187 Ga.App. at 730, 371 S.E.2d 180. The Georgia Court of Appeals was not faced with a question of what state's laws applied, but rather, once Tennessee law applied to what extent did the trial court have to research Tennessee law. *Id.* at 731–32, 371 S.E.2d 180.

In *Tennessee Farmers*, the Georgia Court of Appeals decided that the Due Process Clause of the United States Constitution did not forbid the trial court's application of Tennessee law where the only Georgia contacts were the automobile accident occurred in Georgia and three of the defendants were Georgia residents. *See Tennessee Farmers*, 178 Ga.App. at 74, 341 S.E.2d 898. First, *Tennessee Farmers*, may be a case where the Due Process Clause would prohibit application of Georgia law in a claim between the insurance company (a Tennessee resident), the uninsured defendant (a Tennessee resident), and the plaintiffs (Tennessee residents). However, that question was not before the Georgia Court of Appeals. To the extent that *Tennessee Farmers* stands for the proposition that Georgia no longer prohibits the application of non-forum common law in contract cases, then this Court finds that the *Tennessee Farmers* is contrary to the Georgia Supreme Court's pronouncements in *General Telephone*, *Menendez*, and *Avnet*.

Finally, the Eleventh Circuit and its district courts repeatedly have approved the Georgia rule limiting the application of non-forum substantive law to statutes and case-law interpreting those statutes. In *Singletary v. Southeastern Freight Lines, Inc.*, 832 F.Supp. 1552 (N.D.Ga.1993), the district court stated that under Georgia's interpretation of *lex loci contractus*, "[t]he application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, as here, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Singletary*, 832 F.Supp. at 1556; *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n. 6 (affirming Georgia's limitation on applying a non-forum's laws); *Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (Georgia limits the application of another state's law to statutes and related caselaw); *J.P. Stevens & Co., Inc. v. Liberty Mutual Insurance Co.*, No. 91–1241, slip op. 7–9 (N.D.Ga. Mar. 9, 1993) (Georgia only applies another state's statutes and related caselaw and not another state's common law), *vacated as moot*, No. 93–8750 (11th Cir. Mar. 15, 1994); *Bradham v. Randolph Trucking Co., Inc.*, 775 F.Supp. 395, 397 (M.D.Ga.1991) (Under Georgia *lex loci contractus*, a court may only apply another state's statute's and caselaw interpreting those decisions), *aff'd on other grounds, Bradham v. Randolph Trucking Co., Inc.*, 960 F.2d 1018 (11th Cir.1992).

Defendants argue that *Old Hickory Products Co., Ltd.*, 366 F.Supp. 913 (N.D.Ga. 1973), is a correct interpretation of Georgia's interpretation of *lex loci contractus*. In *Old Hickory Products*, the district court found that Georgia's restriction of *lex loci contractus* to non-forum statutes was founded upon an old pleading practice, which was antiquated and had been discarded by the Georgia legislature in 1968. *See* O.C.G.A. § 9–11–43(c). In reaching its conclusion the court in *Old Hickory Products* specifically found that the Georgia prohibition upon non-forum common law was not part of Georgia's "substantive choice-of-law rule, [but] is part and parcel of Georgia's adherence to the common-law rule that foreign law be pleaded and proved." *Old Hickory Products*, 366 F.Supp. at 920. In a footnote, the *Old Hickory Products* court conceded that "[a]t most, the presumption of identity rule is a rule of evidence, limiting the admissibility of evidence on the asserted factual question of foreign law." *Id.* at 920 n. 6.

If Defendants' position is accurate that Georgia's presumption of identity is a matter of pleading practice or at most a rule of evidence, then this Court is not prohibited from applying New York common law.[4] However, if Georgia's presumption of identity rule is part of Georgia's substantive choice of law rules, then this Court sitting in diversity is bound to apply Georgia's choice of law rules, and in the absence of an applicable statute in New York must apply the common law of Georgia. In *Old Hickory Products* the court found that Georgia's presumption of identity rule was not part of Georgia's substantive choice of law rules. This Court respectfully disagrees. The Georgia Supreme Court and the courts in the Eleventh Circuit all treat Georgia's restriction on the application of non-forum law to statutes and related cases, as part of the substantive choice of law rules of Georgia.[5]

██ In sum, it is undisputed that there is no New York statute on point in this case. In the absence of a statute, Georgia courts presume that the common law controls, and will apply the common law as developed in Georgia and not in another state. As *Klaxon* mandates, a federal court sitting in diversity shall apply the choice of law rules of the forum in which it sits. This Court sits in Georgia and applies Georgia's choice of law

---

4. *See* Fed.R.Civ.P. 44.1

5. *Old Hickory Products* was decided in 1973, just five years after O.C.G.A. § 9–11–43(c) first was passed. Twenty-one years later, and with the hindsight of the Georgia Supreme Court's pronouncements in *General Telephone, supra* text, and *Menendez, supra* text, along with the Eleventh Circuit's decisions in *Kirkpatrick, supra* text, and *Frank Briscoe, supra* text, this Court finds that Georgia's presumption of identity rule is a substantive part of Georgia's choice of law rules. Neither Federal Rule of Civil Procedure 44.1 nor O.C.G.A. § 9–11–43(c) overrule Georgia's substantive choice of law rules.

rules. In contract cases Georgia follows *lex loci contractus*. However, for whatever reason, Georgia traditionally has limited its application of foreign forum law to statutes and cases interpreting those statutes. Thus, this district court must follow that rule.[6]

State courts, not federal courts, should be the final arbiters of state law. *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir.1992). If Georgia wishes to dispose of its traditional approach to *lex loci contractus*, along with its peculiar limitations, then that is a task best left to the Georgia courts. Given the Georgia Supreme Court's opinions in *General Telephone, Menendez, Avnet,* and *Trustees of Williams Hospital,* as well as the cases in this Circuit addressing Georgia's interpretation of *lex loci contractus,* this court finds (1) that Georgia's approach to *lex loci contractus* limits application of non-forum law to statutes and caselaw interpreting those statutes, and (2) that Georgia's limitation on *lex loci contractus* is a substantive part of its choice of law rules and not a procedure for pleading or a rule of evidence. Therefore, this Court finds that under Georgia's interpretation of *lex loci contractus,* the absence of any applicable

New York statute mandates that Georgia common law apply to this action.

### C. Due Process Clause Requires Significant Contacts For the Application of a Forum's Substantive Law

Having decided that Georgia's choice of law rules require the application of Georgia law, the Court's duty now is to examine Defendants' constitutional challenge to the application of Georgia law to the New York site. Defendants contend that application of Georgia law to the insurance coverage of the New York site would violate the Due Process Clause.[7]

In order for a "State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 2977, 86 L.Ed.2d 628 (1985) (citing *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 639–40, 66 L.Ed.2d 521 (1981)); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir.1987) ("even if Georgia law would require application of its own common law

---

6. Defendants presented well articulated and persuasive arguments to support their position. Indeed, Defendants' position is arguably a wise rule in today's world. Electronic legal databases permit a court in any state to obtain the current law of another state with minimal effort. Unfortunately, this Court cannot consider Defendants' contentions merely as a matter of federal law. Rather, this Court must apply Georgia's choice of law rules as if it were a Georgia state court.

Despite the appeal of Defendants' arguments, Georgia's interpretation of *lex loci contractus* is not intellectually indefensible. Indeed, the forum state is not bound to apply the law of another state where it would violate the forum's public policy. *See Nevada v. Hall,* 440 U.S. 410, 422, 99 S.Ct. 1182, 1189, 59 L.Ed.2d 416 (1979); *Pacific Insurance Co. v. Industrial Accident Comm'n,* 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939); *Ryder Truck Lines, Inc. v. Goren Equipment Co.,* 576 F.Supp. 1348, 1354 (N.D.Ga. 1983); *Karimi v. Crowley,* 172 Ga.App. 761, 324 S.E.2d 583 (1984); *see generally,* EUGENE F. SCOLES & PETER HAY, CONFLICT OF LAWS § 17.46 (1984).

Regardless of the original purpose of limiting the application of non-forum law to statutes and related cases, at least one benefit of the rule is an ability to determine the non-forum's public policy. Statutes are hopefully good indicators of a

state's public policy as evinced by that state's legislature. Where the non-forum has a statute on point, then the Georgia courts may be better equipped to identify any potential violation of Georgia public policy. Should the non-forum statute violate Georgia's public policy, then the Georgia court will not apply it to the case.

Where there is not a specific statute, then it is often more difficult to determine the non-forum's public policy purely from cases interpreting the common law. One way to ensure that Georgia's public policy is not contravened, where the non-forum law is purely that state's common law, is to require that Georgia courts apply Georgia's common law.

This Court's role when sitting in diversity is not to redraw Georgia's choice of law rules. That is a task for the Georgia courts. None of the Georgia Supreme Court's decisions has overruled Georgia's limitation upon the application of non-forum law.

7. Since the constitutionality of applying the forum's laws to a claim is evaluated under the Due Process Clause and the Full Faith and Credit Clause of the United States Constitution, this Court will evaluate Defendants' objections under both.

rules ... the law of Georgia could be applied consistent with due process only if the particular transaction had some significant relation to Georgia"); *but see, J.P. Stevens & Co., Inc. v. Liberty Mutual Insurance Co.,* No. 91–1241, slip op. 7–9 (N.D.Ga. Mar. 9, 1993), *vacated as moot,* No. 93–8750 (11th Cir. Mar. 15, 1994).[8]

In *Allstate,* the Supreme Court examined whether Minnesota's contacts with the parties and the claim were substantial enough so that forum law could be constitutionally applied. *Allstate* involved an automobile accident which occurred in Wisconsin. The decedent's insurance policy was issued in Wisconsin and all of the parties, including the decedent, were Wisconsin residents. Subsequently, the decedent's wife (the plaintiff) moved to Minnesota and brought suit against the insurance company in Minnesota. The Minnesota trial court applied Minnesota law, which permitted recovery for the plaintiff, whereas Wisconsin law would have limited the plaintiff's recovery. The United States Supreme Court found that an aggregation of contacts existed between the forum (Minnesota) and the claim, so that application of forum law did not violate the Due Process Clause or Full Faith and Credit Clause of the United States Constitution. Specifically, the Supreme Court found that the decedent worked in Minnesota for 15 years, that the insurer was doing business in Minnesota, and that the plaintiff's choice of Minnesota was unrelated to forum-shopping.[9] The Court found that these contacts were substantial enough to make application of Minnesota law constitutional.

This action arose from insurance coverage on two separate sites; one in New York and one in Georgia. Plaintiff Shorewood is identified as a citizen of Georgia in the Petition for Removal [1–1]. Defendant Hartford Fire Insurance Company has been doing business in Georgia since 1913. Defendant Commercial Union Insurance Company has been doing business in Georgia since 1960. Although the insurance contracts were delivered in New York, they were: (1) issued by companies doing business in Georgia, (2) issued to an insured doing business in Georgia, (3) issued for a site in Georgia. Merely including another state within the coverage of the insurance policy does not make the application of Georgia law unconstitutional. Defendants cannot legitimately contend that application of Georgia law to an insurance contract on a Georgia site is arbitrary and fundamentally unfair just because the insurance contract spans more than one state.[10]

Where an insurance contract is issued for sites in New York and Georgia, and the events giving rise to the litigation occurred in both states, the application of Georgia substantive law is not arbitrary and fundamentally unfair so as to violate the Due Process Clause and the Full Faith and Credit Clause of the United States Constitution. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818, 105 S.Ct. 2965, 2977, 86 L.Ed.2d 628 (1985) (citing *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 639–40, 66 L.Ed.2d 521 (1981)); *see also Sun Oil Co. v. Wortman,* 486 U.S. 717, 735, 108 S.Ct. 2117, 2128, 100 L.Ed.2d 743 (1988) (Brennan, J.,

**8.** *J.P. Stevens & Co., Inc. v. Liberty Mutual Insurance Co.,* No. 91–1241, slip op. 7–9 (N.D.Ga. Mar. 9, 1993), is cited by Defendants in support of their position that application of New York law would be unconstitutional. However, in *J.P. Stevens,* the environmental contamination which gave rise to the litigation occurred in South Carolina. Georgia's only contact with the litigation was the fortuity that the plaintiff was headquartered in Georgia. Here, the litigation arose from contamination at two different sites; one of which was in LaGrange, Georgia. Thus, events which create a significant part of the alleged liability, in this case, occurred in Georgia.

**9.** In *Allstate* it was stipulated that the plaintiff first moved to from Wisconsin to Red Wing, Minnesota, where her former husband had

worked. The plaintiff then remarried and moved to Savage, Minnesota. The litigation in *Allstate* was instituted just over three weeks after her move to Savage, Minnesota. *Allstate,* 449 U.S. at 318–19, 101 S.Ct. at 642–43. The majority opinion specifically found that the plaintiff's post-occurrence change of residence was not motivated by litigation considerations. *Id.* at 319 n. 28, 101 S.Ct. at 643 n. 28.

**10.** A plaintiff's choice of forum is regarded with little or no significance. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 820, 105 S.Ct. 2965, 2978, 86 L.Ed.2d 628 (1985). However, in this case, Plaintiffs have not randomly chosen a forum. Rather, Plaintiffs choice of forum is rationally connected to the Georgia site which is one-half of the insurance coverage provided by Defendants.

concurring); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir.1987). Therefore, this Court will apply the substantive law of Georgia to this action.

## III. *CONCLUSION*

Defendants' Motion for Partial Summary Judgment [26–1], is **DENIED.** Plaintiff's Motion for Partial Summary Judgment [30–1] is **GRANTED.** The substantive law of Georgia shall apply to this action.

**SO ORDERED.**