**AMERICAN NATIONAL FIRE INSURANCE CO. and Great American Insurance Co., Plaintiffs,**

v.

**MIRASCO, INC., Defendant.**

**Mirasco, Inc., Plaintiff,**

v.

**American National Fire Insurance Company, Defendant.**

**Nos. 99 Civ. 12405(RWS), 00 Civ.5098(RWS).**

United States District Court, S.D. New York.

May 15, 2001.

---

Kingsley & Kingsley, Hicksville, NY (Harold M. Kingsley, of counsel), for American National Fire Insurance Co.

Haight Gardner Holland & Knight, New York, NY (John M. Toriello, of counsel), for Mirasco, Inc.

## OPINION

SWEET, District Judge.

American National Fire Insurance Co. and Great American Insurance Co. (the "Insurers"), plaintiffs in 99 Civ. 12405 (the "New York Action") and defendants in 00 Civ. 5098 (the "Georgia Action"), have moved for summary judgment to dismiss the punitive damage counterclaim of defendant Mirasco, Inc. ("Mirasco") in the New York Action as well as a similar claim in the Georgia Action. Both the counterclaim and claim are based upon a Georgia statute providing a remedy for bad faith on the part of the insurer. For the reasons set forth below, the motion is granted at this time.

These New York and Georgia Actions represent opposing sides of the same coin, an insurance claim by Mirasco relating to a shipment of frozen beef liver rejected by Egyptian authorities upon its arrival in Alexandria. Diligent lawyering has provided additional basis for another scrimmage of motion practice before reaching the merits of the dispute. In order to determine whether or not Mirasco has a claim for damages resulting from the alleged bad faith treatment by the Insurers of this claim, it is necessary to determine the law which will be applied to the insurance policy giving rise to the claim in view of the absence of any choice of law provision.

### Prior Proceedings

Following informal discussion concerning the resolution of an insurance claim filed early in 1999 by Mirasco, on December 22, 1999, the Insurers commenced the New York Action against Mirasco seeking a declaration that they were not obligated to pay Mirasco's losses under the policy. In response Mirasco asserted a counterclaim against the Insurers under Georgia law for breach of contract and bad faith.

On March 8, 2000, Mirasco commenced the Georgia Action against the Insurers in the Superior Court of Georgia, Fulton County, seeking compensatory and exemplary damages, including attorneys' fees, under Georgia law for the Insurers' breach of the policy and their bad faith denial of Mirasco's claim. The Insurers removed the Georgia Action to federal court, and Mirasco sought to remand. After finding that diversity jurisdiction existed, the United States District Court for the Northern District of Georgia, on July 5, 2000, transferred the Georgia Action to this Court, stating:

The most persuasive reason for transferring this action is that a related action involving the same issues is current-

ly pending in the United States District Court for the Southern District of New York. Transferring this case would promote judicial economy by preventing the duplication of judicial effort and avoiding the possibility of inconsistent results. Defendants submit that pursuant to the "first to file" rule this case should be transferred to the New York court as the action currently pending there was filed before the instant action. The first to file rule provides that where two courts have concurrent jurisdiction over substantially similar actions, the first court in which jurisdiction attaches has priority to consider the case. *See Martin v. South Carolina Bank,* 811 F.Supp. 679, 686 (M.D.Ga.1992). Plaintiff argues in response that a court may decline to apply the first to file rule where priority was obtained by filing a declaratory judgment in the transferee court in anticipation of litigation. *See Martin v. South Carolina Bank,* 811 F.Supp. 679, 686 (M.D.Ga.1992). However, doing so is not mandatory. *Allstate Ins. Co. v. Clohessy,* 9 F.Supp.2d 1314 (M.D.Fla. 1998). In *Martin,* the court also explained that while a "plaintiff's choice of forum is entitled to deference, it is not a more important factor than the presence of related proceedings in the transferee district." *Id.*

Plaintiff asserts that Defendants' declaratory judgment motion was filed in anticipation of litigation as it was filed while the parties were negotiating over Defendants' refusal to pay on Plaintiff's claim. The vice president of Mirasco apparently met with representatives for Defendants on December 8, 1999. Defendants filed their declaratory judgment action on December 28, 1999. Defendants assert that they did not file in anticipation of litigation but simply because they saw no resolution to the liability dispute. They assert that it is common in the insurance industry to file a declaratory judgment action in such situation.

Although the court finds it a close call as to whether Defendants did, indeed, file their action in anticipation of litigation, the court will nonetheless transfer this case in the interest of judicial economy. These actions clearly should be consolidated for purposes of adjudication in order to preserve judicial resources and avoid inconsistent judgments, and as the convenience of witnesses may favor transfer the court will so grant it. *See e.g., Tingley Systems, Inc. v. Bay State HMO Management, Inc.,* 833 F.Supp. 882 (M.D.Fla.1993) (finding convenience of parties and witnesses favored transfer of action to district in which defendant's declaratory judgment action was pending; although both parties would be inconvenienced by litigating in other's chosen forum, all parties and witnesses would be more inconvenienced by litigating related actions in separate courts); *Allstate Ins. Co. v. Clohessy,* 9 F.Supp.2d 1314 (M.D.Fla.1998) (explaining "the first-filed action is preferred, even if it is declaratory, unless considerations of judicial and litigant economy, and the just effective disposition of disputes, require otherwise"); *Martin,* 811 F.Supp. at 686 (granting transfer to court in which declaratory judgment action pending when said court had already denied transfer as not doing so would result in waste of judicial resources and the possibility of inconsistent judgments).

In the New York Action complaint, the Insurers asserted that maritime law governed the action which gave rise to a motion by Mirasco to dismiss and to stay the New York Action. In an order of September 20, 2000, familiarity with which is as-

sumed, it was held that jurisdiction was based solely upon diversity of citizenship.

Discovery has gone forward, and the Insurers have moved to dismiss Mirasco's claim for punitive damages based upon the Insurers' bad faith in responding to its claim. That motion, the subject of this opinion, was deemed fully submitted on February 21, 2001.

### The Facts

The Insurers are Ohio corporations with their principal place of business in Cincinnati and licensed to do business in New York as a marine insurance company. Mirasco is a Georgia corporation with its principal place of business in Atlanta.

On March 15, 1990, the Insurers issued an insurance policy to Mirasco entitled "Open Cargo Policy No. 7375220" (the "Policy") which was originally effective March 15, 1990 and which was rewritten effective March 15, 1996. International Insurance Brokers, Inc. ("IIB") in New York on behalf of Mirasco prepared the Policy and submitted it to the Insurers' New York office where it was executed and returned to IIB.

The Policy provides coverage for physical loss or damage to lawful goods in transit. The Policy covers conveyances:

Per steamer and/or steamers and/or motor vehicles and/or barge and/or sailing vessel and/or land conveyance and/or aircraft and/or mail and/or parcel post and connecting conveyances by land or otherwise.

Policy, Clause 7, "Conveyances."

The Policy includes a "Rejection Coverage" clause (the "Rejection Clause"). This clause provides in relevant part that the Policy covers "the risks of rejection or condemnation by the government of the country of import or their agencies or departments during the period of this insurance," see Policy, Rejection Clause,

Part A.1., but excluding coverage for the "embargo or prohibition" of goods, see Policy, Rejection Clause, Part D.

Clause 39 of the Policy refers to the "statutes of New York, and/or state or county having jurisdiction" to determine time bars.

Clause 40 of the Policy states:

It is a condition of this policy and it is hereby agreed that International Insurance Brokers, Inc. is The Insured's broker and shall be deemed to be exclusively the agents of The Insured and not of These Insurers; any notice in connection with affecting this insurance which is given or delivered by or on behalf of These Insurers to International Insurance Brokers, Inc., including notice of cancellation, shall be deemed to have been delivered to The Insured.

Policy, Clause 40, "Brokers".

Clause 60 of the Policy states:

Authority is hereby given to The Insured to issue These Insurers' Certificates, special policies and all endorsements (if required) on any or all risks applying under this policy, which are not to be valid unless countersigned by an authorized representative of The Insured.

Policy, Clause 60, "Privilege to Issue Certificates".

The Policy contains no choice of law provision. The Policy was delivered to Mirasco and certificates of insurance were mailed to Mirasco and later completed and countersigned by Mirasco in Atlanta.

On December 31, 1998, the vessel M/V Spero, which was chartered by Mirasco, departed Houston, Texas bound for Alexandria, Egypt bearing a cargo of frozen beef livers. The M/V Spero arrived in Alexandria on or about January 23, 1999. However, the Egyptian authorities would

not permit the cargo to be landed. Mirasco ordered the vessel to return to Houston where the cargo was sold as salvage. Mirasco then presented a claim to the Insurers in the amount of $2,946,290.23. The Insurers paid Mirasco $400,000 to cover the cost of the return ocean freight to Houston, and by letters of May 9, 1999 and September 22, 1999, have rejected Mirasco's claim on the ground that Mirasco's claim does not meet the requirements of the Rejection Clause. The Mirasco claim was rejected by the Insurers in their Cincinnati office.

Section 33–4–6 of Georgia Insurance Code provides, in relevant part:

Liability of insurer for damages and attorney's fees.

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 percent of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the action against the insurer. The amount of any reasonable attorney's fees shall be determined by the trial jury and shall be included in any judgment which is rendered in the action . . .

O.C.G.A. § 33–4–6.

■ New York law does not provide a cause of action for bad faith denials of insurance claims. *Rocanova v. Equitable Life Assurance*, 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994).

### The Applicable Conflict of Law Rules

■ As a preliminary matter, courts must decide what conflict of law rules apply in order to determine the applicable substantive law governing the dispute. Normally a federal court sitting in diversity applies the conflicts rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Where, as here, the case is transferred from another district, the issue becomes slightly more complex.[1] Compounding that problem is the fact that a possible result in this case is the application of different conflict rules (and thus potentially different substantive law) to the New York Action and the Georgia Action, even though the claims are mirror images and are being tried in the same court.

Fortunately, in this case, both Georgia's and New York's conflict rules yield the same result, therefore, the issue of which conflict of law rules apply needs not be decided.

### New York Law is Applicable

The three possible choices of law for a are Ohio, Georgia and New York. For the reasons set forth below, New York law governs the issue of bad faith claims for denial of coverage.

### Georgia Choice of Law Analysis

■ Georgia applies the *lex loci contractus* test to determine applicable law. *General Telephone Co. of the Southeast v. Trimm*, 252 Ga. 95, 311 S.E.2d 460 (Ga. 1984).

The general rule as to contracts of all kinds is that they are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears

---

**1.** In *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443, the Supreme Court held that in diversity actions where venue has been transferred, the transferor state's law applies.

from the contract itself that it is to be performed in a state other than that in which it was made, in which case . . . the laws of that sister State will be applied, so long as such laws do not conflict with the statutes, powers, or rights of the state wherein it was executed and sought to be enforced.

*Tillman v. Gibson*, 44 Ga.App. 440, 161 S.E. 630, 632 (1931) (internal citations omitted). *See also, Trimm*, 252 Ga. 95, 311 S.E.2d 460 (1984) (affirming the lex loci contractus test as stated in *Tillman*.)

In *Coffin v. London & Edinburgh Ins. Co.* (27 F.2d 616 (N.D.Ga.1928)), a case which applies the Georgia conflict of law rule, the court decided on similar facts to apply New York law to an insurance contract where the policy covered property in Georgia, the assured resided in Georgia and the insurance company sent an investigator to Georgia.[2] In that case the court stated, "[t]he location of the property insured is not conclusive in fixing the law which the parties intended to contract under. It might be a ship at sea, or a house in a city never visited by either party. In case of loss the contract can be performed without visiting the place of destruction." *Id.* at 617.

Although Mirasco has advanced delivery of the Policy in Georgia as a grounds for applying Georgia law, it has acknowledged that "the location of a contract's delivery or performance does not necessarily dictate the choice of law analysis. Rather, the overall intent of the parties is determinative." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 926 F.Supp. 1566, 1575 (S.D.Ga.1995) (Memorandum of Law of Mirasco, Inc., p. 9). Further, delivery of the Policy to IIB in New York was delivery to Mirasco under Clause 40.

■ Finally, recognizing the strength of the arguments that New York law applies, Mirasco has cited its "presumption of identity" rule, *see Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F.Supp. 1577, 1579–82 (N.D.Ga.1994), to make the Georgia punitive damages statute applicable, there being no equivalent statute in New York according to Mirasco. However, by its terms, the rule as between the original thirteen states applies only to the applicability of Georgia *common law*. As stated by the court in *Shorewood*, under the presumption of identity rule, "Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.* at 1581 (internal citations omitted.). The application of Georgia statutory law is not contemplated by the rule.

The locus of the contractual relationship under Georgia's *lex loci contractus* test was New York, therefore the applicable law is that of New York.

### New York Choice of Law Analysis

■ As stated by Mirasco in its brief, New York courts look to the "law of the jurisdiction with the strongest interest in the resolution of the particular issue presented." *James v. Powell*, 19 N.Y.2d 249, 279 N.Y.S.2d 10, 17, 225 N.E.2d 741 (1967) (Memorandum of Law of Mirasco, p. 2). In cases involving insurance contracts, important factors to be considered include the "location of the insured risk, residence of the parties and where the contract was issued and negotiated." *Evvtex Co. v. Hartley Cooper Assocs.*, 911 F.Supp. 732, 738, *aff'd* 102 F.3d 1327 (2d Cir.1996) (*quoting Avondale Indus., Inc. v. Travelers Indemnity Co.*, 774 F.Supp. 1416, 1423 (S.D.N.Y.1991) and *citing Olin Corp. v. Insurance Co. of North Am.*, 743 F.Supp.

---

**2.** In *Mitchell v. State Farm Fire & Casualty Co.* (902 F.2d 790), the 10th Circuit distinguished *Coffin*, but did so in an analysis of Colorado conflict rules.

1044, 1049 (S.D.N.Y.1990), *aff'd,* 929 F.2d 62 (1991)).

The policy was negotiated between IIB and Great American in New York where the Rejection Coverage clause was prepared and included in the Policy; the Policy was issued in New York; the risk insured had no particular location, other than the port of departure and port of return, both being in Texas; and investigation of the claim. It now appears that decision of declination occurred principally in Ohio and in part in New York.

The only connection Georgia has to the dispute is the domicile of the insured and possibly the issuance of the certificates of insurance, which is disputed. Ohio has a similarly slim connection as the domicile of the Insurers and the place of the rejection of the claim.

Under New York's interest analysis, the applicable law is the law of New York.

### New York Law On Bad Faith Denials of Coverage

New York law has barred a punitive damage claim against insurers unless the conduct complained of is sufficiently egregious to constitute an independent tort and forms part of a pattern of conduct directed at the public at large. *Rocanova v. Equitable Life Assurance,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994); *and see, New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 317, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). In *Great American Ins. Co. v. J. Aron & Co.,* 1995 WL 325652, 1995 AMC 2854 (S.D.N.Y.1995), this Court followed *Rocanova v. Equitable Life* and dismissed a counterclaim alleging bad faith in rejecting coverage for losses under a marine insurance policy. Applying New York law, the punitive damage counterclaim in the New York Action will be dismissed as well as the equivalent claim in the Georgia Action.

### Conclusion

Because the Policy was made in New York and because New York's interest predominates over Ohio and Georgia, the claim and counterclaim of Mirasco based on Georgia statutory law are dismissed.

The parties are directed to consolidate these actions on consent or if necessary by motion.

It is so ordered.